IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | Case No. 1:24-cr-00065 | |
| RUI JIANG, | ) | Hon. Rossie D. Alston | |
| | ) | | |
| Defendant. | ) | | |

### DEFENDANT'S MOTION TO SUPPRESS

The defendant Rui Jiang, by and through undersigned counsel, respectfully moves the Court to suppress any and all evidence seized during the September 24, 2023, search of his residence because it was obtained in violation of the Fourth Amendment. The Fairfax County search warrant was invalid because it lacked probable cause to search for items in his residence connected to the charge of making online threats of death or bodily injury under VA Code § 18.2-60. In describing objects to be seized, the warrant was overbroad in seeking objects that were not contraband (and in fact, legal) and were unrelated to charged offense. Accordingly, for these reasons and those set forth below, the search warrant for Mr. Jiang's residence was invalid and the defense respectfully requests that the Court suppress the evidence seized during the September 24, 2023 search of his residence.

### I.    Factual background.

Within less than a 24-hour period on September 23 to September 24, 2023, Mr. Jiang made several posts on his Instagram account of videos and photographs expressing his anger, frustration, and sense of betrayal with God. After viewing these

posts, Mr. Jiang's former romantic partner called the Anne Arundel Police Department ("AAPD"), who then called Fairfax County Police Department ("FCPD") to perform a welfare check on him. When FCPD officers were not able to locate Mr. Jiang at his apartment, they called Prince William County Police Department ("PWCPD") to report a possible threat of active violence at Park Valley church based on Mr. Jiang's posts.

A PWCPD officer responded to the church, where he encountered and subsequently detained Mr. Jiang. The officer performed a pat down search for officer safety, where he recovered a firearm, a gold pocketknife, and a loaded magazine from Mr. Jiang's person. The officer also secured Mr. Jiang's credit card knife and his cellphone on his person. Instead of arresting Mr. Jiang, the PWCPD officer transported him to a hospital to be evaluated for purposes of detaining him under an emergency custody order through the Community Services Board. After Mr. Jiang was transported to the hospital, his vehicle parked at the church was inventoried before it was towed. Law enforcement found the following objects inside his vehicle: a Walther gun box with the matching serial number to the gun found on Mr. Jiang's person, a box of 9 mm ammunition, a loaded gun magazine with 9mm rounds that matched the ammunition, a pocketknife, shooting targets, pepper spray, and a cellphone. There is no indication that any of the items found on Mr. Jiang's person or in his vehicle were contraband. Indeed, he had a valid concealed carry permit.

That same day, at 10:45 PM, FFXPD officers sought a search warrant for Mr. Jiang's residence. *See* Exhibit 1 (Search Warrant). Based on the offense of

electronically sending threats of death or bodily injury in violation of Virginia Code §

18.2-60, the officers sought the following objects from Mr. Jiang's residence, most of

which related to firearms:

> Any and all firearms, and any components to include ammunition,
> magazines, frames, slides and other parts pertaining to a firearm, records
> and documents pertaining to the sale and or purchase of firearms and any
> documents related to the crime of threats of death or bodily injury, and
> all electronic devices.

*See id.* at GOV-1466.

The affidavit in support of the search warrant was three pages. The first page

describes the affiant's background and training, that the affiant was requesting a

search warrant "in relation to § 18.2-60, 1950 Code of Virginia as amended, to wit:

Threats of death or bodily injury," the physical location of Mr. Jiang's apartment

complex, and that the information in the affidavit was based on the affiant's

investigation. *Id.* at GOV-1470. For probable cause, the affiant refers to three

categories of information.

First, the affiant described how Mr. Jiang made "concerning statements on his

Instagram account, 'ray43386.'" *Id.* at GOV-1471. Those statements included the

following:

- A September 23, 2023 post that "showed a subject pointing what
  appeared to be a firearm at a TV screen that had a church on it" and
  a caption that had "God's worst enemy on it."

- A video of "the subject burning pages in a pot on their stovetop" and
  the caption indicated that the pages were from a Bible.

- During the morning on September 24, 2023, several pictures of Mr.
  Jiang parked at Park Valley Church that had the following captions:
  "Blood will be on your hands"; "When it all goes down

> #bulletToTheHead blood is on your hands"; "I'm not hear [*sic*] to
> sabotage the mission, I am here to deny the men the life God actively
> puts so much effort to deny. No women will be harmed."; "Welcome to
> Park Valley Church attended by many top secret gov clearance holders
> in the area. From this day forward you will know that this is how you
> all repaid me. Blood will be on your hands"; and "This is not personal.
> This is taking the lives that God denied me, the love that God blessed
> other men with."

*See id.* Additionally, the affiant stated that there was a photo in one of the posts of "what appears to be a physical document which has been signed" but that "[t]he signature is only partially visible, as are the contents of the document." *Id.*

Second, the affiant referred to Mr. Jiang's interview to support probable cause to search his residence. Specifically, the affiant states that Mr. Jiang mentioned "he maintains a journal." *Id.* He also admitted that he was the owner of the "ray43386" account and that he made the posts in question. *Id.*

Lastly, the affiant stated that Mr. Jiang was found at Park Valley Church during services with a loaded firearm on his person, that he was carrying an additional loaded magazine in his pants pocket, and that in his car, officers located another loaded magazine. *Id.* The affiant pointed to Mr. Jiang's firearms purchase history "which shows they purchased a firearm in January and August 2023" and therefore "submit[s] that the residence contains more firearms than what were previously recovered by the police." *Id.* at GOV-1472.

Based on those three categories of information, as well as the affiant's training and experience and other law enforcement officer's knowledge, the affiant stated that "persons who commit crimes keep the fruits and instrumentalities of their crimes in their primary residence" so "that they can check on the security of such items in

4

privacy and with minimal fear of discovery." *Id.* Accordingly, the affiant submitted that Mr. Jiang's residence contained evidence of a crime, i.e., making online threats of death or bodily injury under Virginia law. *Id.*

Because the officers sought a search warrant outside of daytime hours, they had to show good cause for doing so, which was to "ensure the preservation of evidence." *Id.* at GOV-1469. Although the affidavit requires the officers to state the reasonable efforts that were made to locate a judge and why that judge was unavailable prior to asking for a magistrate to authorize the warrant, the officers simply stated that their reasonable efforts were that they "[c]ontacted Police Liaison Commander who did not have after-hours contact for judge," nothing more. *Id.* At 10:45 PM, the magistrate signed the search warrant for Mr. Jiang's residence.

The following was returned as a result of that search:

- USB Hard Drives
- Two empty holsters
- Bible
- Small can of pepper spray
- Two cameras
- Four laptops
- Two tablets
- Records and documents
- Three cellphones

*See* Exhibit 2 (Search Warrant Return).

## II. The state search warrant was invalid because it lacked probable cause, it was overbroad, and there is no good faith exception for this barebone affidavit.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and

states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. Cont. Amend. IV. In issuing a search warrant, a magistrate must determine, based on the totality of the circumstances set forth in the information presented, that "there is a fair probability that contraband or evidence of *a crime* will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added).

A court reviewing whether a magistrate's decision to issue a warrant is tasked with ensuring that the magistrate had a "substantial basis for concluding that probable cause existed." *Id.* at 238-39 (alterations, quotations, and citation omitted). While reviewing courts "should pay great deference to a magistrates' findings of probable cause . . . this does not mean that warrants based on conclusory allegations should be upheld[.]" *See United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1996) (internal quotations and citation omitted).

Accordingly, in evaluating an affidavit in support of a search warrant for a particular place, the question "is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 and n. 6 (1978)). Courts have upheld search warrants for residences only where "some information *links* the criminal activity to the defendant's residence." *Id.* at 1583 (emphasis added). When a warrant is based on an affidavit "so lacking in indicia of probable cause as to render

6

official belief in its existence entirely unreasonable," exclusion is an appropriate remedy. *Brown v. Illinois*, 422 U.S. 590, 610-11 (Powell, J., concurring in part).

With respect to the contents of the warrant, the Fourth Amendment separately protects against general warrants that authorize "exploratory rummaging in a person's belongings . . . by requiring a particular description of the things to be seized." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010) (internal citation omitted). The particularity requirement is fulfilled when the warrant identifies the items to be seized by their relation to the designated crimes and when the description of the item leaves nothing to the discretion of the officer executing the warrant. *Id.* (internal citations omitted). Suppression of evidence is required for general warrants.

With respect to home searches as a general matter, the Fourth Circuit has held that "the home is first among equals." *United States v. Lyles*, 910 F.3d 787, 793 (4th Cir. 2018) (citing *Florida v. Jardines*, 596 U.S. 1, 6 (2013)). "Any 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed . . . ." *Id.* (citing *United States v. U.S. Dist. Court (Keith)*, 407 U.S. 297, 313 (1972)). Here, the law enforcement officers obtained a search warrant in violation of Mr. Jiang's Fourth Amendment rights and therefore any evidence as a result of that warrant must be suppressed.

### a. The state search warrant lacks probable cause because there was no nexus between the alleged criminal conduct and evidence at Mr. Jiang's residence.

The law is clear that a search warrant must be based upon a showing of probable cause to believe that a legitimate object of the search is located in a

particular place. *See Steagald v. United States*, 451 U.S. 204, 213 (1981). That simply did not happen here given that there is nothing in the state search warrant's affidavit to link the alleged criminal conduct of Mr. Jiang making online threats of death and bodily injury to his apartment.

VA Code § 18.2-60 criminalizes *threats* contained in "electronically transmitted communication[s] producing a visual or electronic messages." *See Holcomb v. Commonwealth*, 709 S.E.2d 711, (Va. Ct. App. 2011) (internal citations omitted). The state search warrant was based on this offense alone. *See* Ex. 1 at GOV-1470. As a result, the search warrant had to articulate facts to support probable cause that there would be contraband or evidence at Mr. Jiang's residence related to the alleged criminal conduct of making online threating communications. The warrant blatantly failed to do so here.

The warrant cited to the fact that Mr. Jiang made a series of threatening communications on Instagram. Those posts included a photo of a person pointing what appeared to be a firearm at a TV screen, a video of a person burning pages in a pot on a stovetop, a photo of what appears to be a signed physical document, and several photos taken at Park Valley Church. *See* Ex. 1 at GOV-1471. There is nothing in those posts to indicate *when* Mr. Jiang took any of those pictures; meaning, those photos could have been taken on September 23 or 24, or months earlier. Of course, there is evidence of when he posted them on Instagram, but there is nothing in the affidavit stating when those pictures were actually taken—or even that they were created by Mr. Jiang rather than copied off of the internet. There is also nothing in

the affidavit stating *where* Mr. Jiang took those photographs, nonetheless that any of those pictures were taken from his residence. The only reference to a location is those photos relating to Park Valley Church.

With respect to the photo of the physical document, not only is there nothing in the affidavit to indicate when or where that photo was taken, but there is not enough information to indicate that the document even belonged to Mr. Jiang given that the "signature is only partially visible, as are the contents of the document." *Id.* The affidavit also points to the fact that Mr. Jiang mentioned he had a journal. But again, there is nothing in the affidavit to indicate that he used that journal in connection with the stated offense as opposed to journaling about innocent behavior. Indeed, because threatening words need to be communicated to lose their First Amendment protection, documents written and maintained in private could not evidence a threats charge.

The *only* time that the affidavit identifies any object as being located at the residence is with respect to firearms. The affidavit states that because only one firearm was recovered on Mr. Jiang and that his firearms purchase history stated that he purchased a firearm in January and August 2023, "the residence contains more firearms than what were previously recovered by the police." *Id.* at GOV-1472. But this fails for two reasons. First, Mr. Jiang legally owned the firearms and had a concealed weapon permit. Unlike drugs, a legally owned firearm is not contraband. And, unlike almost any other physical possession, possession of a firearm is constitutionally protected—so identifying the potential for there to be firearms in the

residence provides no basis for law enforcement to enter the residence in the absence of evidence that the firearms were unlawfully owned or that they were evidence of a crime. And second, there is nothing to indicate that Mr. Jiang's possession of a firearm was in any way related to the offenses of making online threatening communications because that offense is established by the act of communicating, not by ownership of a firearm.

Accordingly, nothing in the affidavit provides any basis to believe that evidence relating to Mr. Jiang making online threatening communications would be in his residence. Again, for residential searches, the Fourth Circuit has held that such searches "have been upheld *only* where some information links the criminal activity to the defendant's residence." *Lalor*, 996 F.2d at 1583 (emphasis added). Absent from the affidavit in this case are facts stating that Mr. Jiang physically posted on Instagram while at his residence (and in fact, the posts seem to indicate otherwise), that any of the photos or video from the posts were of his residence, that the photo of the physical document was even written by Mr. Jiang – nonetheless, at his residence, or that his journal has any connection to the alleged criminal conduct.

Instead, the affidavit seeks to search his apartment just because he was arrested at a church with a firearm after making online posts, not because there was any connection between the alleged criminal conduct and his residence. The Supreme Court has made clear, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the

property to which entry is sought." *Zurcher*, 436 U.S. at 556. Accordingly, just because Mr. Jiang was suspected of engaging in criminal conduct for making online threatening communications, that did not give law enforcement the right to conduct a sweeping search of his apartment.

### b. The warrant was overbroad in seeking objects that were not contraband and wholly disconnected from the alleged criminal conduct.

When a search is conducted pursuant to a warrant, it "is limited in scope by the terms of the warrant's authorization." *See Williams*, 592 F.3d at 519. Executing agents are authorized "to seize only evidence of a particular crime" and cannot engage in exploratory searches for general evidence of criminality (or in this case, evidence of legally-possessed items that the officer applying for the warrant apparently believed Mr. Jiang should not have). *See United States v. Manafort*, 323 F. Supp. 3d 795, 802 (E.D. Va. 2018) (internal citation omitted). That type of exploratory search is exactly what happened here.

Critically, the search warrant primarily sought objects related to Mr. Jiang's legally owned firearm: requesting permission to search for "any and all firearms, and any components thereof to include ammunition, magazines, frames, slides, and any other parts pertaining to a firearm, records and documents pertaining to the sale and or purchase of firearms . . . ." *See* Ex. 1 at GOV-1472. The *only* request for objects related to the alleged criminal conduct is "any documents related to the crime of threats of death or bodily injury, and all electronic devices." *Id.*

"In the Fourth Circuit, a warrant generally satisfies the particularity requirement when it allows officers 'to seize only evidence of a *particular crime*.'" *See United States v. Young*, 260 F. Supp. 3d 530, 546 (E.D. Va. 2017) (internal citations omitted) (emphasis added). Such examples include warrants authorizing a search for evidence related to narcotics; the smuggling, packing, distribution, and use of controlled substances; the theft of fur coats; and bank robbery. *Id.* (collecting cases). *United States v. Lyles* is instructive here, although the facts were far more egregious. In *Lyles*, law enforcement sought an "astoundingly broad warrant" based on a finding of three marijuana stems in the trash. *See* 910 F.3d at 795. The warrant "empowered the police to seize a host of things seemingly unconnected to marijuana possession," including "any computers, toiletries, or jewelry, and the search of every book, record, and document in the home" where the connection between personal possession of marijuana and those things "is, to put it gently, tenuous." *Id.* The Fourth Circuit affirmed the lower court's decision granting the motion suppress any evidence obtained from the defendant's residence.

In this case, law enforcement similarly sought objects that were not contraband and not tied to the particular crime of making online threatening communications. First, Mr. Jiang legally possessed the firearm found on his person so there was nothing to indicate that it was contraband. And second, there were no facts to support how searching for additional firearm-related objects would reveal either contraband or anything connected to the crime of making online threatening communications. Accordingly, the search warrant requesting evidence that was *not*

related to a specific crime resulted in a sweeping search of Mr. Jiang's residence that is in violation of the Fourth Amendment.

### c. The good faith exception does not apply here given that the magistrate appears to have rubber-stamped a barebones affidavit.

Evidence obtained in violation of a defendant's constitutional rights is generally inadmissible in the prosecution's case in chief. *See Mapp v. Ohio*, 261 U.S. 643, 657 (1961). However, an exception applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984). Put another way, exclusion of evidence based on a defective warrant is not automatic; instead it depends "on the efficacy of the rule in deterring Fourth Amendment violations in the future." *Herring v. United States*, 555 U.S. 135, 141 (2009).

Accordingly, evidence seized pursuant to a defective warrant will not be suppressed unless (1) the affidavit contains a knowing or reckless falsity;[1] (2) the magistrate acts as a rubber stamp for the police; (3) the affidavit does not provide the magistrate with a substantial basis for determining the existence of probable cause; or (4) the warrant is so facially deficient that an officer could not reasonably rely on it." *United States v. Thompson*, 263 F. App'x 374, 378 (4th Cir. 2008) (internal citation

---

[1] The one falsity in the affidavit is that the affiant states that there is an Instagram post of a video burning pages in a pot on "their" stovetop. *See* Ex. 1 at GOV-1471. Instead, the affidavit should say "a" stovetop because there is nothing to indicate that this was at Mr. Jiang's residence. For all the affiant knew, it could have been an AI-generated picture or a clip downloaded off the internet.

omitted); *see also United States v. Gary*, 528 F.3d 324, 329 (4th Cir. 2008). The good faith exception does not apply here for at least two reasons.

*First*, the affidavit did not provide the magistrate with a substantial basis – nonetheless, any basis – for determining probable cause. "An affidavit is 'bare bones' when an affiant merely recites the conclusions of others without corroboration" or independent investigation of the allegations. *United States v. Jenkins*, 666 Fed. App'x 321, 324 (4th Cir. 2016). Critically, a court in this circuit has found that the good faith exception does not apply when there is no plausible connection between the alleged criminal conduct and the residence. *See, e.g.*, *United States v. Woodley*, 447 F. Supp. 3d 487, 494-95 (E.D. Va. 2020). In *Woodley*, the defendant was found in possession of 256 grams of marijuana, but the evidence was "simply missing" in the affidavit that connected that possession to a subsequent search of his residence. *Id.* at 495 (citing the lack of facts that the defendant was selling drugs on a street near his residence, of drug trafficking activities, of a prolonged police investigation with information from various sources, or telephone conversations made from the residence regarding drug trafficking). The court held that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 496 (internal citation omitted).

This affidavit presents the same problem as in *Woodley*. There is nothing to connect Mr. Jiang's alleged criminal conduct to his residence. Instead, the affidavit merely recited Mr. Jiang's Instagram posts and some statements he made while detained, and pointed to his otherwise legal possession of a firearm. The officers

14

conducted no further investigation to link Mr. Jiang's alleged criminal conduct to potential evidence at his residence. For example, there are no facts about when or where the photos were posted, where his journal was kept, or whether the physical document was Mr. Jiang's or where it was kept. The affidavit instead mainly focuses on searching his home for more firearm-related evidence that is not contraband and not relevant to the alleged criminal conduct. There is nothing in this affidavit from which a magistrate could independently verify the existence of probable cause.

The reason there were no additional facts or information in the application supporting a connection between Mr. Jiang's alleged criminal conduct and his residence is because the officers had none. The Fourth Circuit has previously prohibited application of the good faith exception in these circumstances. *See, e.g.*, *Lyles*, 910 F.3d at 797 (declining to apply the good faith exception where an officer's "vague and conclusory allegation" that the defendant was a drug dealer was "hardly the sort of uncontroverted evidence that could support a search warrant"); *see also United States v. Wilhelm*, 80 F.3d 116, 121–23 (4th Cir.1996) (declining to apply good faith exception when the "bare bones" affidavit failed to justify reasonable reliance because (a) it only provided unsupported, conclusory statements rather than facts from which a magistrate could independently verify the existence of probable cause and (b) the information was supplied by an unknown informant whose credibility could not be assessed).

And *second*, the magistrate clearly acted as a rubber stamp for law enforcement. The Fourth Circuit has held that a magistrate abandons his judicial role when issuing

a warrant on a "bare bones affidavit." *Wilhelm*, 80 F.3d at 121–23. Not only was this a bare bones affidavit, but the way that the officers went about seeking this search warrant also supports the notion that the magistrate functioned as a "rubber stamp." The officers sought the warrant outside of working hours to "ensure the preservation of evidence" but took no efforts to describe why such actions were needed, especially given that Mr. Jiang was detained pursuant to an emergency custody order and then later detained by law enforcement. And law enforcement did not appear to make any substantial effort to contact a judge but instead merely cited the fact that the police liaison commander did not have the after-hour contact for a judge. The magistrate authorized the warrant at 10:45 PM on September 24 without any analysis undertaken—apparently without asking why there was a risk of evidence preservation when the defendant was in custody, and without asking why the affidavit sought to search for and seize legally owned firearms as evidence of an offense that cannot be committed with a firearm – that demonstrates that the magistrate acted as merely a rubber stamp.

Under these facts, it is apparent that the law enforcement officer simply wanted to search Mr. Jiang's residence and contrived to do so that evening because it was apparently convenient. This allowed "the officer [to] engage[] in the often competitive enterprise of ferreting out crime," *Johnson v. United States*, 333 U.S. 10, 14 (1948), and to "usurp[] the magistrate's role," *United States v. Lull*, 924 F.3d 109, 117 (4th Cir. 2016).

Accordingly, for these reasons, the good faith exception does not apply and the evidence obtained from the state search warrant for Mr. Jiang's residence should be suppressed.

## III.    Conclusion

For the reasons set forth here, all evidence obtained pursuant to September 24, 2023, state search warrant for Mr. Jiang's residence should be suppressed because the warrant lacked probable cause specific to the residence and was a general warrant for objects that were not contraband or evidence.

Date: May 3, 2024                           Respectfully submitted,

                                            **RUI JIANG**

                                            by counsel:

                                            Geremy C. Kamens
                                            Federal Public Defender for the
                                            Eastern District of Virginia

                                            by: ____/s/_____
                                            Brittany M. Davidson
                                            VA Bar No. 90660
                                            Assistant Federal Public Defender
                                            1650 King Street, Suite 500
                                            Alexandria, VA 22314
                                            Telephone: (703) 600-0817
                                            Fax: (703) 600-0880
                                            Brittany_Davidson@fd.org

                                            Todd M. Richman
                                            VA Bar No. 41834
                                            Assistant Federal Public Defender
                                            Office of the Federal Public Defender
                                            1650 King Street, Ste. 500

Alexandria, VA 22314
(703) 600-0845 office
(703) 600-0880 facsimile
Todd_Richman@fd.org