IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA      )
                              )
    v.                        )      Criminal Action No. 1:24-cr-65 (RDA)
                              )
RUI JIANG,                    )
                              )
    Defendant.                )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Rui Jiang's ("Defendant") Motion to Dismiss Count One for Duplicity (Dkt. 36), Defendant's Motion to Strike Statutory Aggravators from Count One (Dkt. 37), Defendant's Motion to Dismiss Count Two based on *United States v. Taylor*[1] (Dkt. 38), Defendant's Motion to Dismiss Count Two based on Duplicity or to Require the Government to Elect (Dkt. 39), Defendant's Motion to Strike Notice of Special Findings (Dkt. 40), Defendant's Motion to Suppress (Dkt. 41), Defendant's Motion *in Limine* to Preclude Use of Term Manifesto (Dkt. 42), and Defendant's Motion *in Limine* to Preclude Introduction of Objects Seized from Vehicle and Residence (Dkt. 43).

Considering the Motions together with the Government's Omnibus Opposition (Dkts. 50; 51), Defendant's Replies (Dkts. 52; 53; 54; 55; 56; 57; 58), and the argument heard at the February 3, 2025 Motions Hearing, the Court DENIES Defendant's Motion to Dismiss Count One for Duplicity (Dkt. 36), DENIES Defendant's Motion to Strike Statutory Aggravators from Count One (Dkt. 37), DENIES Defendant's Motion to Dismiss Count Two Based on *United States v. Taylor* (Dkt. 38), GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion to Dismiss Count

---

[1] *United States v. Taylor*, 596 U.S. 845 (2022).

Two based on Duplicity or to Require the Government to Elect (Dkt. 39), DENIES Defendant's Motion to Strike Notice of Special Findings (Dkt. 40), DENIES Defendant's Motion to Suppress (Dkt. 41), GRANTS Defendant's *Motion in Limine* to Preclude Use of Term Manifesto (Dkt. 42), and GRANTS-IN-PART and DENIES-IN-PART Defendant's *Motion in Limine* to Introduction of Objects Seized from Vehicle and Residence (Dkt. 43) for the reasons that follow.

## I. BACKGROUND

Defendant was indicted on March 27, 2024.  On April 3, 2024, Defendant was arraigned in this Court on an indictment charging Defendant with the following offenses: (1) attempted obstruction of free exercise of religious beliefs; (2) use of firearm during and in relation to a crime of violence; and (3) transmitting in interstate and foreign commerce a threat to injure the person of another.  Dkt. 20.  At the arraignment, a jury trial was set for May 28, 2024.  On May 3, 2024, Defendant filed six pretrial motions and, on May 6, 2024, Defendant filed two motions *in limine*. Dkts. 36; 37; 38; 39; 40; 41; 42; 43.  The Government filed its oppositions to the motions on May 14, 2024.  Dkts. 50; 51.  On May 9, 2024, pursuant to 18 U.S.C. § 3161(h)(1)(D) and 18 U.S.C. § 3161(h)(7)(B)(ii), the Court continued Defendant's trial from May 28, 2024, to June 24, 2024, given the complex nature of the case and the need to address the numerous pending motions.  Dkt. 44.  During a June 5, 2024 hearing, the Court *sua sponte* raised the issue of Defendant's competency to proceed with trial, found that there was reasonable cause to believe that Defendant was then suffering from a mental disease or defect that affected his ability to assist properly in his defense and/or understand the charges against him, and ordered that Defendant undergo a psychiatric psychological examination related to his competency.  Dkt. 65.  Following separate competency evaluations completed by Dr. Travis Flower and by evaluators with the Bureau of Prisons, Dkts. 71; 75; 79, the Court found Defendant competent to stand trial during a competency

hearing on November 21, 2024, Dkts. 87; 88.[2]  The Court then, with the agreement of all parties, set the jury trial for March 3, 2025, and a pretrial motions hearing for February 3, 2025.  *Id.*

## II.  DEFENDANT'S PRE-TRIAL MOTIONS

As indicated in the preface to this memorandum opinion and order, Defendant has filed the following six pre-trial motions: (1) Motion to Dismiss Count One for Duplicity; (2) Motion to Strike Statutory Aggravators from Count One; (3) Motion to Dismiss Count Two in the Indictment Based on *United States v. Taylor*; (4) Motion to Dismiss Count Two in the Indictment Based on Duplicity or to Require the Government to Elect; (5) Motion to Strike Notice of Special Findings; and (6) Motion to Suppress.  Dkts. 36-41.  The Court will address each motion in turn.

### A.  Motion to Dismiss Count One for Duplicity

Defendant first moves this Court to dismiss Count One of the Indictment because it is duplicitous.  Count One charges Defendant with intentionally attempting to obstruct, by force and threat of force, the congregants of Park Valley Church in the enjoyment of their free exercise of religious beliefs, including an attempt to kill and including the use, attempted use or threatened use of a dangerous weapon pursuant to 18 U.S.C. §§ 247(a)(2), (d)(1), and (d)(3).  Dkt. 20 at 1. Defendant argues that Count One is duplicitous because it charges multiple violations in a single count.  Dkt. 36 at 6-10.  According to Defendant, by identifying the victim of the offense in the Indictment as "the congregants of Park Valley Church," rather than identifying each individual, the Government has run afoul of 18 U.S.C. § 247(a)(2) because the statute requires a per victim unit of prosecution.  *Id.* at 10.  Finally, Defendant asserts that the proper remedy for the allegedly duplicitous count is either dismissing the count in its entirety or requiring the Government to elect

---

[2] This Court's sealed November 21, 2024 Order further explains the procedural and factual background regarding Defendant's competency proceedings.

which offense it would like to pursue.  *Id.* at 10-12.  In response, the Government argued during the February 3, 2025 Motions Hearing that the language of the statute permits it to base the charge on groups or bodies of victims, not just individual victims.[3]  Feb. 3, 2025 Tr. at 6:1-14.  In the alternative, the Government also argues that, were Count One duplicitous, the proper remedy would not be dismissal because Defendant is not prejudiced by the suggested duplicitous nature of that Count.  Dkt. 51 at 15.

i.     Legal Standard

"An indictment is duplicitous if it charges two offenses in one count, creating the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count."  *United States v. Robinson*, 855 F.3d 265, 270 (4th Cir. 2017).  But "[e]ven if a count is duplicitous, it is not to be dismissed unless it causes prejudice to the defendant."  *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018) (internal quotations omitted); *see also United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009) ("[D]uplicitous charging is impermissible only if it prejudices defendant"); *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (explaining that a "defendant must demonstrate prejudice in order to invoke [the] duplicity doctrine because the doctrine is more than an exercise of mere formalism") (internal quotations omitted); *see also United States v. Ahmed*, 94 F. Supp. 3d 394, 431-32 (E.D.N.Y. 2015) (citing *United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977)) ("Even if an indictment includes a duplicitous count,

---

[3] Defendant asserts in its Reply in Support of Motion to Dismiss Count One for Duplicity that the Government conceded in its Response brief that Count One is duplicitous.  Dkt. 52 at 1 (explaining that "[b]y acknowledging that 'the proper unit of prosecution' for violations of 18 U.S.C. 247(a)(2) is an 'individual victim,' ECF 51 at 15, the government concedes that Count One is duplicitous").  During the Motions Hearing on February 3, 2025, however, the Government clarified that it has *not* conceded that point but rather is arguing in the alternative.  Feb. 3, 2025 Tr. at 5:21-24.

'[d]uplicity . . . is only a pleading rule and would in no event be fatal to the count.'").  Thus, for dismissal to be the appropriate remedy, a defendant must show risk of prejudice beyond that which is inherent in all duplicitous counts.

ii.    Analysis

The Court begins with the language of the statute itself, which is the starting point for any issue of statutory interpretation.  *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003).  The statute states, *inter alia*, that "[w]however . . . intentionally obstructs, by force or threats of force, including by threat of force against religious real property, *any person* in the enjoyment of *that person's* free exercise of religious beliefs, or attempts to do so[] shall be punished . . ."  18 U.S.C. § 247(a)(2) (emphasis added).  The issue is whether the term "person" requires a per-victim unit of prosecution, requiring the identification of individual victims as opposed to a general group or body of victims as is the case here.  *See* Dkt. 20 at 1 (identifying the victims of the offense as "the congregants of Park Valley Church").

As noted by the Government during the February 3, 2025 Motions Hearing, the Fourth Circuit's analysis in *United States v. Bly*, 510 F.3d 453 (4th Cir. 2007), is instructive.  The *Bly* Court analyzed the term "person" as it appeared in 18 U.S.C. § 876(b), which prohibits the sending of a "communication containing any threat to kidnap *any person* or any threat to injure *the person* of the addressee or of another" with "intent to extort from *any person* any money or other things of value."  18 U.S.C. § 876(b) (emphasis added); *Bly*, 510 F.3d at 460-64.  There, the Fourth Circuit rejected the defendant's argument that his conviction under § 876(b) was defective because the University of Virginia ("UVA"), a public university, was not a "person" subject to being extorted under the statute.  *Bly*, 510 F.3d at 461.  In determining that the term "person" was not limited to "a living person only" and that UVA was included in the term "person," the *Bly* Court observed:

> [I]t is entirely reasonable to conclude that an artificial entity, such as UVA, can be the victim of an extortion demand.  Moreover, under ordinary usage, the term "person" is defined as "a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties."

*Bly*, 510 F.3d at 460-61 (quoting *Webster's Dictionary*, 1686 (3d ed. 2002)).

Likewise, it is entirely reasonable to conclude here that a body of persons, such as "the congregants of Park Valley Church," can be the victim of attempted obstruction of free exercise of religious beliefs in violation of 18 U.S.C. § 247(a)(2).  Given that the Fourth Circuit has held that the ordinary usage of the term "person" includes "a body of persons," this Court does not find that the Government has "ignore[d] the text of the statute" by "substituting an entire congregation for the statutory 'that person'" as Defendant contends.  Dkt. 36 at 2.  Rather, the Government has applied the ordinary usage of the term "person" as interpreted by the Fourth Circuit in *Bly*.  As such, Count One is not duplicitous.

Defendant's reliance on an out-of-Circuit case, *United States v. Earnest*, 536 F.Supp.3d 688 (S.D. Cal. 2021), in support of his argument that 18 U.S.C. § 247(a)(2) requires a per-victim unit of prosecution is unpersuasive.  While Defendant relies on *Earnest* to argue that an indictment must name each individual victim, that is not what the *Earnest* Court held.  The issue in *Earnest* was whether § 247(a)(2) *allowed* the Government to charge a defendant for more than one offense per event, not whether the Government was *required* to.  *United States v. Earnest*, 536 F. Supp. 3d 688, 707 (S.D. Cal. 2021) ("[I]t is sufficiently clear from the text and legislative history of [§ 247(a)(2)] that Congress intended to *allow* the unit of prosecution to be tied to the number of victims." (emphasis added)).

Defendant also cites to *United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012), to support his assertion that a statute that first refers to "any person" and immediately thereafter refers to "that

person" indicates that Congress intended a per-victim unit of prosecution. Dkt. 36 at 7-8. This Court, however, interprets the holding of *Shrader* more narrowly. The statute in *Shrader*, 18 U.S.C. § 2261A(2), required the offender to "place[] that person *in reasonable fear* of the death of, or serious bodily injury to . . ." *Shrader*, 675 F.3d at 313 (emphasis added). In interpreting this statute, the *Shrader* Court observed that the statute "requires that [the defendant's] intimidating conduct actually induce fear in 'that person'" and that, as a result, "the effect on a particular victim is also how Congress has chosen to allocate punishment for the offense." *Id.* (explaining that the statute "defines the defendant's crime—and therefore the unit of prosecution— in terms of his intent to strike fear in a particular individual"). By contrast, Congress has not imbued § 247(a)(2) with a similar requirement that Defendant's conduct induce a specific response, such as fear, in "that person." Instead, § 247(a)(2) criminalizes the intentional obstruction, or attempted intentional obstruction of "any person's enjoyment of that person's free exercise of religious beliefs," without requiring proof of any particular emotional or physical response from "that person." Therefore, the reasoning of *Shrader* does not directly apply here, and the Court applies the ordinary usage of "person" as described in *Bly*, 510 F.3d at 460-61.

Assuming for the sake of argument, that even if Count One were duplicitous, Defendant has not demonstrated that he would face undue prejudice. In assessing prejudice to the defendant, federal circuit courts, including the Fourth Circuit, consider "the policy concerns that underlie the doctrine against duplicitous charges." *United States v. Burfoot*, 899 F.3d 326, 337 (4th Cir. 2018); *see also United States v. Murray*, 618 F.2d 892, 897-98 (2d Cir. 1980). The relevant policy considerations guiding the Court's consideration include:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant

adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.

*Sturdivant*, 244 F.3d at 75.  Here, Defendant first contends that since "all duplicitous counts carry the risk that a defendant could be convicted by a jury that is less than unanimous on any specific offense," Defendant is prejudiced, and Count One should be dismissed for this reason alone.  Dkt. 52 at 5.  While it is true that there may be a risk of prejudice inherent in duplicitous counts, "[i]f the doctrine of duplicity is to be more than an exercise in mere formalism" it can only be applied where prejudice exists, *i.e.* where the policy considerations supporting the rule against duplicitous indictments are actually present for the defendant.  *Murray*, 618 F.2d at 898.  Thus, Defendant's focus on the inherent risk present in *all* duplicitous counts is not sufficient to demonstrate that the policy considerations are actually present here.

Next, Defendant argues, without explanation, that he is prejudiced by Count One because it is easier to prove Count One as it is currently written than the individual charges would be.  Dkt. 52 at 6.  This Court is not convinced.  *C.f. Earnest*, 536 F. Supp. 3d at 707 (finding that an indictment was not multiplicitous for charging over 50 counts under § 247(a)(2) and noting that "the Court cannot say that when [Defendant] opened fire on the entire congregation that he did not intend to obstruct the free exercise of religion of every person present").  To be sure, even if Count One is somehow easier to prove because it is based on the effect on the congregation as a group, Defendant has not demonstrated that this would be unduly prejudicial or unfair – given that his conduct is alleged to have targeted the congregation as a group.  Further, the Court does not find that Defendant lacked adequate notice or that there is a risk of double jeopardy or a non-unanimous jury verdict.  That is, Defendant has not established a risk that "general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another," because defendant has

not established what secondary crime could be hidden within the charges. *Sturdivant*, 244 F.3d at 75. Accordingly, even if Count One were duplicitous, the Court finds that Defendant has not demonstrated that he is prejudiced.[4]

Finally, the Fourth Circuit has made clear that the defect of a duplicitous indictment is easily cured through jury instructions. *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010) ("It is black letter law that duplicitous indictments can be cured through appropriate jury instructions.").

Thus, Defendant's Motion to Dismiss Count One for Duplicity will be denied.

### B. Motion to Strike Statutory Aggravators from Count One

Next, Defendant moves this Court to strike the statutory aggravators charged in Count One because they "do not apply as a matter of law to the conduct alleged." Dkt. 37 at 1. In support of his argument, Defendant argues that § 247(d) requires application of the statutory aggravators to be conduct-based, but that the Government seeks to apply the aggravators based on Defendant's *intent* to commit the conduct, which is contrary to the statute's plain meaning. According to Defendant, the plain language of § 247(d) demonstrates that the § 247(d) aggravators are triggered by "acts committed" and the attempt alleged here, which is "intent-focused," does not amount to "acts committed" as proscribed by the statute. *Id.* at 7-10. In response, the Government argues

---

[4] At least one circuit, while not addressing the issue directly, found a defendant had not demonstrated any prejudice where the indictment charged the defendant with a single count under § 247(a)(2). *United States v. Hari*, 67 F.4th 903, 913 (8th Cir.), *cert. denied*, 144 S. Ct. 436 (2023). While the Eighth Circuit did not directly address the issue of duplicity in *Hari*, it still found that Defendant had not demonstrated any prejudice where the indictment included a single § 247(a)(2) count for obstruction of the free exercise of religious beliefs by individuals at the Dar al Farook Islamic Center. *Id.* at 912; *see United States v. Hari, et al.*, 0:18-cr-150, Dkt. 14 (D. Minn.) (alleging a single count of religious obstruction of "members and other attendees of the Dar al Farook Islamic Center.").

that Defendant's arguments rely on a misreading of the statute and a misapplication of the law regarding attempt. According to the Government, the plain and unambiguous structure of § 247(d) supports the reading that an attempted violation of § 247(a)(2) does constitute an "act" for purposes of applying the statutory aggravators. Dkt. 51 at 20-22.

### i.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that in a criminal case, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Still, a court may not "decide a criminal case on a motion for summary judgment." *United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011); *see also United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (holding that "a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial"). However, "a district court may consider a pretrial motion to dismiss an indictment where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." *Weaver*, 659 F.3d at 355 n.*.

To determine the meaning of statutory provisions, the Court relies first and foremost on the plain meaning of the text. *United States v. Roof*, 10 F.4th 314, 390 (4th Cir. 2021). "It is well established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted).

### ii.    Analysis

The Court begins its analysis with the text of the statute. Section 247(a)(2) allows for conviction of a defendant if he intentionally obstructs another's enjoyment of the free exercise of

religion.  Section 247(d) provides aggravators in subsections (1) and (2) that increase the statutory

penalties and reads in relevant part that:

> The punishment for a violation of subsection (a) or (c) of this section shall be— (1) if death
> results from acts committed in violation of this section or if such acts include . . . an attempt
> to kill, a fine in accordance with this title and imprisonment for any term of years or for
> life, or both, or may be sentenced to death . . . (3) if . . . such acts include the use, attempted
> use, or threatened use of a dangerous weapon, explosives, or fire, a fine in accordance with
> this title and imprisonment for not more than 20 years, or both . . .

18 U.S.C. § 247(d)(1), (3).  Based on the plain reading of the statute, the aggravators apply where

the acts committed in violation of § 247(a)(2), intentional obstruction of a person's free exercise

of religious belief, include the conduct described in § 247(d)(1) and (3).  *See Roof*, 10 F.4th at 403

(analyzing § 247(d)(1) and noting that the death penalty is authorized if death results from acts

committed in violation of § 247(a)(2)).  Further, because § 247(a)(2) criminalizes both obstruction

of the free exercise of religion and "attempts to do so," an attempt to violate § 247(a)(2) would

also count as an "act" as it pertains to the statutory aggravators in § 247(d).

In the Fourth Circuit, an attempt charge requires: (1) "culpable intent to commit the crime"

and (2) "a substantial step towards completion of the crime that strongly corroborates that intent."

*Engle*, 676 F.3d at 419-20; *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996) (same).  "The

mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also

accompanied by significant conduct."  *Engle*, 676 F.3d at 419   (internal citations omitted).

"Whether conduct represents a substantial step depends on the surrounding factual circumstances;

and the determination is necessarily fact specific."  *Engle*, 676 F.3d at 423 (internal citation

omitted).  When deciding whether a defendant has taken a "substantial step" to complete the

underlying offense, "the focus is on the actions already taken to complete the underlying crime,

not on the acts that remain uncompleted."  *Id.* (citing *United States v. Sanchez*, 615 F.3d 836, 844

(7th Cir.2010)).  Thus, "a court must assess how probable it would have been that the crime would have been committed—at least as perceived by the defendant—had intervening circumstances not occurred."  *Engle*, 676 F.3d at 423 (citing *Pratt*, 351 F.3d at 136).

Here, Defendant does not contend that the § 247(d) aggravators do not apply to attempt cases and acknowledges that the substantial step in an attempt case can trigger the aggravators. Dkt. 53 at 2.  Defendant, however, argues that one can "be charged and convicted of attempting to commit an offense well before attempting to commit the ultimate object of the offense."  Dkt. 36 at 2.  He further asserts that the alleged substantial step of traveling to the church with a concealed firearm that he did not withdraw does not trigger the § 247(d) aggravators because it is not the "*actus reus* of attempted killing or using a firearm."  *Id.* at 2-3, 8-9.  In support of his position, Defendant contrasts the two following examples with the facts of the instant case:

- A person attempts to murder a victim while she attends church, with a bomb surreptitiously placed in her purse. During the service, the would-be killer presses a button intended to remotely trigger the bomb, but it fails to detonate. The defendant has attempted to forcibly obstruct the victim's exercise of religion, and the "acts committed" in that attempted offense—pressing the button to trigger the bomb—include the act of attempting to kill. He has therefore committed a § 247(a)(2) attempt offense and is subject to the § 247(d)(1) aggravator for attempt to kill.

- An assailant shoots at a pastor as he walks into church to lead a service. The shot misses, and the assailant is wrestled to the ground and arrested. The pastor leads the service as scheduled. The assailant has attempted to forcibly obstruct the pastor's exercise of religion, and the "acts committed" in that attempt offense— shooting at the pastor— include the act of attempting to kill. He has therefore committed a § 247(a)(2) attempt offense and is subject to the § 247(d)(1) aggravator for attempt to kill.

Dkt. 53 at 2.  Defendant argues that his case is distinguishable from the above examples because, here, there are no allegations that defendant removed the firearm from his waistband, while at the church except for when instructed to do by law enforcement.  Dkt. 36 at 8-9.  Thus, according to

Defendant, even if the jury wholly agrees with the Government's presentation of the evidence, "it will prove only intent rather than the act of attempting to kill" because he did not engage in conduct while at the church that could be construed as an attempt to kill. *Id.* Therefore, Defendant argues that the statutory aggravators serve no purpose and should be stricken as surplusage. *Id.* at 9.

This Court disagrees. Defendant's argument discounts the "substantial step" analysis of attempt crimes. As the Fourth Circuit held in *Engle*, when analyzing if a defendant has completed a substantial step, the focus is on the acts that have already been taken and the probability that the crime *would have been* committed based on those acts. *Engle*, 676 F.3d at 423 (citing *Pratt*, 351 F.3d at 136) (emphasis added). Here, the Government's allegations include that Defendant engaged in "detailed planning, arming, leaving of five signed copies of a suicide note explaining his murderous actions that was labeled his 'Final Letter,'" traveled to the Church, and monitored Prince William County Police radio frequencies while inside the Church. Dkt. 51 at 23. The Government further alleges that Defendant was confronted by a police officer after Church security officers noticed that he was behaving suspiciously. Dkt. 51 at 14 (alleging that an officer confronted Defendant in the Church lobby where he was already surrounded by the Church's private security). Thus, Defendant's argument that he did not commit an act, seems to minimize the other alleged conduct, each of which increase the probability that the crime would have been committed "had intervening circumstances not occurred." *Engle*, 676 F.3d at 423 (citing *Pratt*, 351 F.3d at 136).

In his motion, Defendant specifically highlights the absence of any allegation that Defendant drew his firearm while in the church, before being prompted to do so by law enforcement to support his position. Dkt. 36 at 8-9. However, that Defendant's alleged attempt to kill may have been thwarted does not mean that he did not commit an "act" or "substantial step."

Whether Defendant's alleged planning and preparation constitutes a substantial step toward obstruction of a person's religion with an attempt to kill and the attempted use of a dangerous weapon is a question that is left for the fact finder at trial and should not be decided by the Court. *See United States v. Simmons*, 11 F.4th 239, 272-74 (4th Cir. 2021) (holding that driving to the intended victim's home and knocking on his door were overt acts in furtherance of an attempt to kill rather than "mere preparation"). Accordingly, the Court finds that the statutory aggravators are properly charged, and the Court will deny Defendant's motion to strike the statutory aggravators.

C.  Motion to Dismiss Count Two based on <em>United States v. Taylor</em>

Defendant next moves this Court to dismiss Count Two in the Indictment based on *United States v. Taylor*, 596 U.S. 845 (2022). Count Two charges Defendant with the use of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). In *Taylor*, the Supreme Court held that, under the circumstances in that case, an attempted Hobbs Act robbery did not qualify as a crime of violence under § 924(c). *Taylor*, 596 U.S. at 851. The Court further explained that to convict on an attempted Hobbs Act robbery charge,

> the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.

*Id.* As such, Defendant asserts that, under *Taylor*, an attempt does not categorically require the government to prove the use, attempted use, or threatened use of physical force – but only the intention to do so – and therefore cannot qualify as a crime of violence for purposes of § 924(c).

More specifically, Defendant argues that, under *Taylor*, to prove attempted religious obstruction involving an attempt to kill, the Government must only prove that Defendant

14

(1) intended to obstruct a person's religious exercise by force or threat of force that involved an attempt to kill and (2) took a substantial step in furtherance of doing so. Dkt. 38 at 5. Defendant contends that the attempted religious obstruction statute does not "require the government to prove as an element that Mr. Jiang used, attempted to use or threatened to use physical force—rather, it can be entirely nonviolent conduct that simply corroborates the intention to commit the offense." Dkt. 38 at 5. Thus, Defendant claims that, under *Taylor*, the offense does not satisfy the definition of a crime of violence. *Id.* at 5-6. Nonetheless, Defendant concedes that controlling Fourth Circuit law forecloses his argument. *Id.* at 6-7.

i.    Legal Standard

"Pursuant to 18 U.S.C. § 924(c)(1)(A), it is a crime to use, carry, or possess a firearm 'during and in relation to any crime of violence.'" *United States v. Simmons*, 11 F.4th 239, 253 (4th Cir. 2021). Courts employ the categorical approach to determine whether an offense is a crime of violence under this statute. *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir. 2019). "To constitute a crime of violence, a predicate offense must have as an element 'the use, attempted use, or threatened use of physical force.'" *United States v. Hunt*, 99 F.4th 161, 175 (4th Cir. 2024) (citing *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*)). "The inquiry is simply whether, looking at the elements of the offense alone, we can know that the government proved that the defendant used, attempted to use, or threatened to use force against another." *United States v. Lassiter*, 96 F.4th 629, 635 (4th Cir. 2024). To answer that question requires the Court to "mull through any number of hypothetical ways to commit a crime that have nothing to do with the facts underlying the predicate § 924(c) offense." *Lassiter*, 96 F.4th at 635 (internal quotations and citation omitted). "If the least culpable conduct punished by the underlying offense can be committed without" the use, attempted use, or threatened use of force, then the offense "is

not 'categorically' a 'crime of violence.'" *United States v. Davis*, 53 F.4th 168, 171 (4th Cir. 2022) (quoting *United States v. Taylor*, 979 F.3d 203, 207 (4th Cir. 2020), *aff'd*, 596 U.S. 845 (2022).

ii. Analysis

The Court finds that Defendant's argument is undermined by controlling Fourth Circuit precedent. While Defendant relies on *Taylor* in support of his argument that offenses with an attempt to kill as an element do not constitute crimes of violence, he also acknowledges that his argument is contrary to controlling Fourth Circuit authority. *See. Lassiter*, 96 F.4th at 633 (holding that attempted murder in aid of racketeering under Virginia law qualifies as a crime of violence under 924(c) because it requires proof of "use, attempted use, or threatened use of physical force"); *see also Hunt*, 99 F.4th at 177 (applying *Lassiter* and noting that "if the phrase 'attempted use of force' refers only to acts such as discharging a firearm, smashing a window, or swinging a knife, most—maybe all—attempt offenses would not be crimes of violence. That cannot be what Congress intended"). Accordingly, the Court will deny Defendant's Motion to Dismiss Count Two as the issue is resolved by the Fourth Circuit's holdings in *Lassiter* and *Hunt*.

D. Motion to Dismiss Count Two Based on Duplicity

Defendant next moves this Court to dismiss Count Two of the Indictment for duplicity. Count Two alleges that Defendant did knowingly use and carry a firearm during and in relation to a crime of violence and did knowingly possess a firearm in furtherance of a crime of violence pursuant to 18 U.S.C. § 924(c). Dkt. 20 at 2. Defendant argues that § 924(c) sets forth distinct "use and carry" and "possession" offenses. Dkt. 39 at 3-4. As such, Defendant argues that inclusion of the two offenses in one count could improperly create the risk that a jury may convict Defendant at trial "without unanimous agreement on which offense in violation of § 924(c) he committed," violating Defendant's Sixth Amendment right to a unanimous jury. Dkt. 39 at 8.

16

Thus, according to Defendant, the appropriate remedy is either to dismiss the count entirely or require the Government to elect to pursue one of the offenses. *Id.* at 3. The Government argues in response that Count Two as charged is not duplicitous, because § 924(c) does not create two separate offenses. Dkt. 51 at 27. Rather, the Government asserts that § 924(c) "proscribes one offense by multiple means." *Id.* The Government also argues again, that even if Count Two is duplicitous, Defendant is not prejudiced and, even if he was, any prejudice to Defendant can be cured through appropriate jury instructions and verdict forms. Defendant argues in reply, as he did with respect to Count One, that duplicitous counts are always prejudicial and that jury instructions or special verdict forms are not adequate remedies because they would cause juror confusion. Dkt. 55 at 4.

i.    Legal Standard

While the Court has outlined the law on duplicity in depth above, the Court will briefly discuss the law on duplicity as it relates to Count Two. An indictment is duplicitous if it charges two offenses in one count as it runs the risk that "a jury would not unanimously agree on the offense that the defendant committed, violating the defendant's Sixth Amendment right to a unanimous verdict." *Robinson*, 855 F.3d at 269. "A single offense that can be committed by alternative means, however, is not necessarily duplicitous." *United States v. Shapat Ahdawan Nabaya*, 2017 WL 1424802, at *12 (E.D. Va. Apr. 19, 2017) (citing Fed. R. Crim. P. 7(c)).

"When faced with an alternatively phrased statute, '[t]he first task' is 'to determine whether its listed items are elements,' thus rendering the statute divisible, 'or means,' thus rendering it indivisible." *United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 517 (2016)). Thus, whether a count in an indictment is duplicitous hinges

on whether the count alleges two separate offenses or two alternative means of committing a single offense. If the latter is true, the count is not duplicitous.

ii.    Analysis

Whether § 924(c) creates two distinct offenses appears to be an unsettled question within the Fourth Circuit. In an unpublished *per curiam* opinion, the Fourth Circuit remarked that § 924(c) "indeed creates distinct 'use and carry' and 'possession' offenses" when addressing a challenge to jury instructions. *United States v. Wood*, 271 F. App'x 338, 342 (4th Cir. 2008) (noting that the Sixth, Eighth, and Tenth Circuits have held the same).[5] But more recently, the Fourth Circuit has "observed that 'the number of offenses in § 924(c) is unsettled.'" *United States v. Banks*, 29 F.4th 168, 181 (4th Cir. 2022) (citing *Robinson*, 627 F.3d at 957 n.4). While the Fourth Circuit has not reviewed the issue of whether the clauses of § 924(c) establish separate elements or means at the charging stage, the Circuit has reviewed the issue under plain error review. In *United States v. Sarvis*, a defendant challenged the sufficiency of his indictment arguing that his § 924(c) charge was erroneous because it "charged the two separate crimes contained in the statute as a single crime." 601 F. App'x 176, 179 (4th Cir. 2015). The Fourth Circuit rejected the defendant's argument and stated

> [w]e discern no error, much less plain error, in the indictment. Sarvis argues that the use of the conjunctive, rather than disjunctive, in the indictment is insufficient. However, "where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive."

---

[5] While Defendant relies on this case to support his position, the Fourth Circuit has repeatedly referred to its opinion in *Woods* as an "unpublished, non-precedential decision." *United States v. King*, 628 F.3d 693, 700 (4th Cir. 2011). As such, it serves only as persuasive authority, and this Court is not bound by it.

*Id.* (citing *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir.2001)).  More recently in *United States v. Banks*, the Fourth Circuit reached the same conclusion and remarked that it remains an open question whether charging both use and carry and possession in a single § 924(c) count is duplicitous.  29 F.4th at 181.  Finally, the other U.S. Courts of Appeals that have considered the question have reached different conclusions.  *Compare United States v. Arreola*, 467 F.3d 1153, 1161 (9th Cir. 2006) (holding that § 924(c)(1)(A) defines only one offense), *with United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004) (holding that § 924(c)(1)(A) criminalizes two separate and distinct offenses), *and United States v. Gamboa*, 439 F.3d 796, 810 (8th Cir. 2006) (accord), *abrogated on other grounds*, *United States v. O'Brien*, 560 U.S. 218 (2010).

Defendant maintains that Count Two is duplicitous not only because of the Fourth Circuit's opinion in *Woods*, but also because a court within the Eastern District of Virginia has also determined that § 924(c) creates distinct "use and carry" and "possession" offenses.  Dkt. 39 at 8; *see also United States v. Pleasant*, 125 F.Supp.2d 173, 176 (E.D. Va. 2000) (holding that an indictment that charged both § 924(c) offenses in single counts were duplicitous because "[t]he words of [§ 924(c)] are rather simple and straightforward" in that "[t]hey proscribed two different kinds of conduct").  The parties have briefed this issue at length and the Court has considered their oral arguments.

While the parties present an interesting legal issue, given the limited case law in the Fourth Circuit, the Court need not and does not determine whether § 924(c)(1)(a) defines two distinct and separate offenses or two alternative means of committing a single offense.  Indeed, such a decision is unnecessary, because even if Count Two is duplicitous, this defect is easily cured through appropriate jury instructions and/or a special verdict form.  *Robinson*, 627 F.3d at 958 ; *United*

*States v. Hewlett*, 467 F. Supp. 3d 347, 359 (E.D. Va. 2020). Any concerns regarding duplicity may be cured by a jury instruction that makes clear the elements and burden of proof for the government to prove the "use and carry" and the "possession" prongs of § 924(c) and by providing a special verdict form with an option for each offense to allow the jury to make clear that the jury is unanimous as to which of the distinct charges that Defendant committed. *See, e.g.*, *Phun v. United States*, 2015 WL 5020886, *4 (E.D. Va. Aug. 19, 2015) ("Even assuming that the statute creates two district [sic] offenses and Count Two was duplicitous as a result, Petitioner has suffered no prejudice because the special verdict form utilized in this case clearly demonstrates that the jury separately and unanimously convicted him of both the possession and the carrying prongs of § 924(c).").

Defendant argues that a curative jury instruction or a special verdict form would be insufficient because it would cause juror confusion given the nature of the charge, but the Court is unconvinced. The Court sees no reason why the jury would be confused by a clear unanimity instruction for each offense or would ignore the instruction and convict based on different grounds. Indeed, courts presume that jurors will carefully follow instructions. *United States v. Brewbaker*, 87 F.4th 563, 583 (4th Cir. 2023) ("We see nothing that sufficiently undercuts our assumption that the jury followed these instructions."). Accordingly, Defendant's motion to Dismiss Count Two for Duplicity will be granted-in-part and denied-in-part. The Motion is granted insofar as the Court will require the parties to submit a special verdict form with their proposed jury instructions. The Motion is denied in all other respects.

20

E.  Motion to Strike Notice of Special Findings

Next, Defendant moves this Court to strike the "Notice of Special Findings" from the

Indictment as surplusage.  Defendant contends that while in some cases the findings need to be

alleged and found by the jury pursuant to *Apprendi v. New Jersey*, 560 U.S. 466 (2000), there is

no legal requirement to include them here as they only relate to the Sentencing Guidelines.  Dkt

40 at 1.  Further, Defendant argues that because the special findings here have no impact on the

statutory sentence that a conviction would authorize, they are extraneous and inappropriate.  *Id.* at

7-8.  In response the Government contends that the notice of special findings is relevant, not

prejudicial, and that the Sentencing Guidelines support their inclusion and thus the notice of special

findings should remain in the Indictment.  Dkt. 51 at 34-38.

i. Legal Standard

Under Federal Rule of Criminal Procedure 7(d), the Court may strike surplusage from an

indictment.  However, a court should only grant a motion to strike surplusage "'if it is clear that

the allegations are not relevant to the charge and are inflammatory and prejudicial.'"  *United States*

*v. Williams*, 445 F.3d 724, 733 (4th Cir. 2006) (quoting *United States v. Rezaq*, 134 F.3d 1121,

1134 (D.C. Cir. 1998)), *cert. denied*, 549 U.S. 933 (2006); *see United States v. Hartsell*, 127 F.3d

343, 353 (4th Cir. 1997) (finding no abuse of discretion in denial of motion to strike alleged

surplusage from indictment where defendant was not prejudiced by the allegations at issue).

"Given this most exacting standard, courts have recognized that [m]otions to strike surplusage are

rarely granted."  *United States v. Alasfar*, 2023 WL 1998272, at *1 (W.D.N.C. Feb. 14, 2023)

(internal citations and quotation marks omitted).  Further, "[a] court can avoid potential prejudice

by not giving the indictment to the jury and specifically instructing the jury that the indictment is

not evidence."  *United States v. Liberto*, 2020 WL 5994959, at *4 (D. Md. Oct. 9, 2020) (citing

*Williams* 445 F.3d at 734); *see also Williams*, 445 F.3d at 734 (noting that a jury instruction that

an indictment is not evidence is typically an adequate safeguard against undue prejudice).

ii. Analysis

At issue here is the Notice of Special Findings listed at the end of Indictment.  The disputed

section provides:

> THE GRAND JURY FURTHER FINDS THAT:
>
> 1. The defendant, RUI JIANG, intentionally selected the victims of his violation of 18 U.S.C. § 247(a)(2), as charged in Count One of this Indictment, because of their actual and perceived religious beliefs.
> 2. The defendant, RUI JIANG, intentionally selected the victims of his violation of 18 U.S.C. § 875(c), as charged in Count Three of this Indictment, because of their actual and perceived religious beliefs

Dkt. 20 at 4.  The Court finds that the special findings are neither irrelevant nor prejudicial to

Defendant.  The Court will address each of Defendant's arguments in turn.

First, though Defendant claims that religious hostility is not an element of Count One or

Count Three as charged and thus it is not relevant, this Court disagrees.  As noted by the

Government, evidence of religious hostility goes directly toward Defendant's motive and has a

tendency to make it "more probable that the defendant intended to obstruct others' free exercise

of religion and intended to transmit a true threat against the congregants of Park Valley Church."

Dkt. 51 at 35; Fed. R. Evid. 401 (stating that evidence is relevant if "it has any tendency to make

a fact more or less probable than it would be without the evidence").  Further, at trial, the

Government will undoubtedly offer evidence supporting these allegations in an effort to prove the

elements of Counts One and Three.

Further, the Fourth Circuit's ruling *United States v. Siegel*, 536 F.3d 306 (4th Cir. 2008),

is instructive.  In *Siegel*, the defendant, charged with murder and bank fraud, moved the district

22

court to strike as surplusage the allegations in the indictment related to other crime evidence that was not a part of the charges in the indictment. *Id.* The other crime evidence involved evidence of the defendant's defrauding her husband and daughters, that occurred prior to the alleged murder and bank fraud. *Id.* The district court held that such allegations were inflammatory and unduly prejudicial, excluded the evidence from trial, and struck the allegations from the Indictment. *Id.* at 313-14. On appeal, the Fourth Circuit reversed the district court, concluding that the allegations of fraud on her husband and daughters were indeed relevant to defendant's motive and *modus operandi* for the murder and bank fraud charges, and that "there simply is no basis for striking the allegations of the Charged Other Crime Evidence from the indictment." *Id.* at 321. Similarly, here, the Court finds no reason to strike the special findings from the Indictment, as they are relevant to the charges.

Moreover, the Court does not find that the allegations of religious hostility are overly inflammatory or prejudicial, particularly when viewed through the lens of the crimes alleged in this case. Here, Defendant allegedly attempted to commit a mass shooting at Park Valley Church. As stated above, the Government will likely offer evidence that "defendant harbored animosity toward the Christian God" to prove Defendant's intent to commit the charged crime. As such, there is no basis to strike these allegations. Dkt. 51 at 36.

Finally, Defendant argues that the Sentencing Guidelines, prohibit use of the special findings in the Indictment. Dkt. 40 at 5-8. Defendant contends that Rule 7 *only* supports the inclusion of special findings in death penalty cases, "because those facts increase the range of statutory penalties available." Dkt. 40 at 7. Thus, according to Defendant, because this not a death penalty case, Rule 7 prohibits the inclusion of the present special findings here. The Government argues in response that Section 3A1.1(a) calls for an offense level increase "[i]f the finder of fact

at trial . . . determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived . . . religion. . . of any person." U.S.S.G. § 3A1.1(a). The Government argues further that though the enhancement does not increase the statutory penalties, the Government would have no way of satisfying the heightened evidentiary standards at trial if no special findings are allowed. Dkt. 51 at 37. Though Defendant presents an interesting legal argument, he cites only to a limited number of cases, none of which espouse the brightline rule that Defendant suggests – that Rule 7 limits the inclusion of special findings unless they relate to enhanced statutory penalties. It does not appear that the Fourth Circuit has directly addressed this issue, but in *United States v. Briscoe*, the Fourth Circuit acknowledges that special findings may be necessary when a determination of certain facts will be crucial to sentencing. 101 F.4th 282, 290 n.5 (4th Cir. 2024). The Court notes that *Briscoe* is distinguishable as there, the Fourth Circuit allowed special findings where the circumstances triggered an enhanced punishment that "had to be pled in the indictment and the facts supporting those enhancements [had to be] found by the jury beyond a reasonable doubt." *Id.* Nevertheless, the *Briscoe* Court did not express a limitation that special findings are limited to the facts set in *Briscoe. Id.*

Ultimately, the Court does not find that the allegations are irrelevant, inflammatory, or misleading as it goes directly toward Defendant's intent to commit the alleged offenses. Further, even assuming that any potential prejudice may result from these allegations in the Indictment, such prejudice would be remedied by "the Court's standard limiting instruction that instructs the jury that the indictment is not evidence." *Williams*, 445 F.3d at 734 ( "[W]e fail to see how [the defendant] could have been prejudiced by the inclusion of those allegations in the indictment, particularly since the indictment was not given to the jury and the district court specifically

instructed the jury that the indictment was not evidence."). The Court will therefore deny Defendant's Motion to Strike the Special Findings.[6]

### F. Motion to Suppress

Next, Defendant moves this Court to suppress evidence seized during the September 24, 2023 search of his residence because the evidence was allegedly obtained in violation of the Fourth Amendment. Dkt. 41 at 1. Specifically, Defendant argues that the underlying Fairfax County search warrant lacked probable cause because there was insufficient basis to establish a nexus between Defendant's "alleged criminal conduct of . . . making online threats of death and bodily injury" and his residence. *Id.* at 7-8. He further asserts that the Search Warrant was overbroad in seeking objects that were not contraband and that were unrelated to the charged offense. *Id.* at 11-13. Finally, Defendant contends that the good-faith exception is inapplicable here because the Magistrate "rubber stamped" a "barebones affidavit." *Id.* at 13-17. In response, the Government contends that the Magistrate had a substantial basis to conclude that a search of Defendant's residence would uncover evidence of a crime and that the search warrant was sufficiently particular and not overbroad. Dkt. 50. Further, the Government states that law enforcement operated in good faith in relying on a judicially-sanctioned warrant. *Id.*

---

[6] During the February 3, 2025 Motions Hearing, the Government provided the Court with a number of similar cases in which special findings were part of the indictment. These example indictments were made part of the record. *See* Dkt. 94-1.

i. Legal Standard

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Probable cause exists where there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Judges, when making probable cause determinations, use a "totality of the circumstances analysis." *Gates*, 462 U.S. at 238. This "standard allows a magistrate judge to review the facts and circumstances as a whole and make a common sense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 974 F.2d 480, 481 (4th Cir. 1992) (quoting *Gates*, 462 U.S. at 238). "A judge's decision to issue a search warrant is reviewed with 'great deference' – they need only 'a substantial basis for finding probable cause.'" *United States v. Briscoe*, 101 F.4th 282, 294 (4th Cir. 2024) (quoting *United States v. Jones*, 942 F.3d 634, 638 (4th Cir. 2019)). Ultimately, probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

The particularity requirement for a search warrant ensures that the search "will be carefully tailored to its justifications" rather than becoming a "wide-ranging exploratory search." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The particularity requirement is satisfied when "the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010). Further, the items listed to be seized pursuant to a warrant must be "no broader than the probable cause on which it is based." *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006).

Search warrants are presumed to be valid; however, a defendant can challenge this presumption. *United States v. Bushay*, 859 F. Supp. 2d 1335, 1377 (N.D. Ga. 2012) ("Search warrants are presumed to be validly issued"); *United States v. Demosthene*, 326 F. Supp. 2d 531, 536 (S.D.N.Y. 2004) (same); *Cf United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) ("Warrant affidavits carry a 'presumption of validity.'") (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

## ii. Analysis

The Fairfax County Search Warrant authorized the search of Defendant's residence for the following items:

> Any and all firearms, and any components to include ammunition, magazines, frames, slides and any other parts pertaining to a firearm, records and documents pertaining to the sale and or purchase of firearms and any documents related to the crime of threats of death or bodily injury, and all electronic devices.

Dkt. 41-1 at 2. The Search Inventory and Return lists the following items: USB Hard Drives, two empty holsters (black in color), Bible, small can of pepper spray (bear spray), two cameras (security camera), four laptops, two tablets, miscellaneous records and documents, and three cell phones. Dkt. 41-2 at 3. Defendant asserts that the Search Warrant was invalid because it lacked probable cause, was overbroad, and the Magistrate rubber stamped a barebones affidavit. The Court will address each argument in turn.

First, the Search Warrant had probable cause. Based on the totality of the circumstances presented to him, the Magistrate had substantial basis to conclude that a search of Defendant's residence would produce evidence of the alleged crime. The Search Warrant was sought in relation to VA Code § 18.2-60, which criminalizes threats contained in "electronically transmitted communication[s] producing a visual or electronic messages." *See Holcomb v. Commonwealth*,

709 S.E.2d 711, 714 (Va. Ct. App. 2011).    The Affidavit supporting the Search Warrant demonstrated that a search of Defendant's residence would produce evidence that Defendant committed the alleged offense.  Dkt. 41-1 at 6-8.  The Affiant stated that Defendant made a series of threatening communications on his Instagram account, "ray43386."  *Id.* at 2.  The Instagram posts included a picture of Defendant "pointing what appeared to be a firearm at a TV screen that had a church on it" with the caption "God's worst enemy," a video of Defendant "burning pages in a pot on their [sic] stovetop" with a caption identifying the pages as coming from a Bible, a picture partially showing a signed physical document containing threats matching the captions of Defendant's Instagram posts, and several pictures taken at Park Valley Church.  *Id.*  The pictures were accompanied by provocative captions, such as "Blood will be on your hands," "When it all goes down #bulletToTheHead blood is on your hands," "I am here to deny the men the life God actively puts so much effort to deny," "This is taking the lives that God denied me," and other similar captions.  *Id.*  In an interview, Defendant stated that he maintained a journal, that he was the owner of the Instagram account, and that he made the posts in question.  *Id.*  Finally, the Affiant stated that Defendant had been found at Park Valley Church with a loaded firearm on his person, as well as an additional loaded magazine in his pants pocket and an additional loaded magazine in his vehicle.  *Id.*  These facts all supported the inference that Defendant was engaged in transmitting threats through electronically transmitted communications producing a visual or electronic message.

In determining whether a nexus existed between the statute, the evidence put forth in the Affidavit, and Defendant's residence, this Court finds that the Magistrate employed common sense and made reasonable inferences to conclude that a search of the residence would produce evidence of Defendant's alleged crime.  *See United States v. Orozco*, 41 F.th 403, 410 (4th Cir. 2022)

(stating that an affidavit need only "supply enough facts for a neutral magistrate, who may make reasonable inferences to fill in any logical gaps, to find the required nexus"). Here, it was reasonable to infer that the evidence of a crime—the items in the pictures posted to Instagram, such as the firearm, Bible pages, or physical document containing threats, and any electronic devices used to create and share the posts—would likely be found at Defendant's residence given that Defendant admitted to making the posts and that, from the descriptions provided in the Affidavit, some of the posts appeared to be taken in a residence. Dkt. 41-1 at 7. Moreover, the Magistrate also reasonably relied on the Affiant's assertion that, "[b]ased on [the] Affiant's knowledge, training, and experience, and the knowledge of other law enforcement personnel communicated to [the Affiant], persons who commit crimes keep the fruits and instrumentalities of their crimes in their primary residence" so "they can check on the security of such items in privacy and with minimal fear of discovery." Dkt. 41-1 at 3. Magistrates are "well within their discretion to rely on an officer's 'assertion of training and experience-based knowledge' to help substantiate the nexus between" the crime and the location to be searched. *United States v. Zelaya-Veliz*, 94 F.4th 321, 335 (4th Cir. 2024). Thus, based on the totality of the circumstances presented to him, the Magistrate could properly conclude that Defendant's residence was the most logical place to search for evidence of the alleged crime. Accordingly, there was sufficient probable cause to authorize the search of Defendant's residence based on the facts presented in the Affidavit, which established a nexus between the alleged crime and location to be searched.

The Search Warrant was also sufficiently particular, authorizing the search of Defendant's residence for items that were not broader than the probable cause upon which it was based. The warrant permitted law enforcement to search for the following:

> Any and all firearms, and any components to include ammunition, magazines, frames, slides and any other parts pertaining to a firearm, records and documents pertaining to the sale and or purchase of firearms and any documents related to the crime of threats of death or bodily injury, and all electronic devices.

*Id.* at 2.

Based on the Affidavit, it was reasonable to permit law enforcement to search for firearms and firearm-related material and to believe that such items could be located at Defendant's residence. The Affidavit detailed that Defendant had made a series of threatening posts on Instagram, in violation of VA Code § 18.2-60. These posts included an image of "the subject" or Defendant pointing a firearm at a TV screen with a church on it and captions referencing bullets and blood. Dkt. 41-1 at 7. Although a loaded firearm was found on Defendant's person when he was detained,[7] the Affidavit also states that Defendant's firearms purchase history showed that he purchased a firearm in January and August of 2023, indicating, based on the Affiant's training and experience, that there were likely additional firearms that were not recovered by law enforcement at Defendant's residence. *Id.* at 7-8. Thus, items pertaining to firearms and the sale and/or purchase of firearms were sufficiently proportional to the probable cause upon which it was based. Likewise, the documents related to the crime of threats of death or bodily injury are directly related to the picture of the physical document that was posted to Defendant's Instagram and to the alleged offense under VA Code § 18.2-60. Further, the Search Warrant's authorization to seize "all electronic devices" is tied to the Affiant's declaration that Defendant uploaded threatening posts

---

[7] During the February 3, 2025 Motions Hearing, Counsel for Defendant stated that the firearm recovered from Defendant's person appears to be similar to the firearm in the Instagram posts. However, the record is devoid of any information to suggest that the Magistrate had information before him to allow him to make this inference. *See United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996) ("When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant.").

to Instagram. Electronic devices would be the logical means through which Defendant created and distributed the threatening posts.

The scope of the authorized search is therefore no broader than the probable cause—namely, that Defendant used Instagram to make threats and may have kept relevant evidence, such as the items in the posts or devices used to make the posts, in his residence. The items listed in the warrant were sufficiently tied to the probable cause established in the Affidavit, and the description of these items was specific enough to ensure the search was not an exploratory or overbroad search.[8] The Search Warrant was therefore sufficiently particular for purposes of the Fourth Amendment.

Accordingly, because the Court finds that the Magistrate had substantial basis to find probable cause to issue the Search Warrant and that the Search Warrant was sufficiently particular based on the probable cause, Defendant's Motion to Suppress will be denied.[9]

### III.  DEFENDANT'S MOTIONS *IN LIMINE*

Motions *in limine* "allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus on the issues the jury will

---

[8] Although Defendant asserts otherwise, these circumstances differ from those in *United States v. Lyles*, 910 F.3d 787, 793-95 (4th Cir. 2018), where law enforcement found scant evidence of marijuana but nonetheless sought a search warrant for the defendant's house authorizing the seizure of a wide variety of items unrelated to marijuana possession, including "computers, toiletries, or jewelry, and the search of every book, record, and document in the home." *Id.* at 795. Here, the Search Warrant did not authorize a broad search for objects that were unrelated to the probable cause upon which the warrant was based.

[9] Given that the Search Warrant satisfied the probable cause and particularity requirements of the Fourth Amendment, the Court need not address the question of whether the good faith exception applies.

consider." *United States v. Verges*, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). District courts have "broad discretion" in deciding motions *in limine*. *See Kauffman v. Park Place Hosp. Grp.*, 468 Fed. Appx. 220, 222 (4th Cir. 2012).

Defendant has filed two motions *in limine* to preclude (1) the use of the term "manifesto" and (2) the introduction of objects seized from Defendant's vehicle and residence. Dkts. 42; 43. The Court will address each motion in turn.

A. Motion *in limine* to Preclude Use of Term Manifesto

Defendant first asks this Court to preclude references to a document found at his residence as a "manifesto" because doing so is substantially more prejudicial than probative. Dkt. 42 at 1. Law enforcement discovered multiple signed copies of a document that Defendant titled "The Final Letter" in his residence and on his electronic devices. Dkt. 51 at 39. Defendant also posted a picture of part of the document to his Instagram account. *Id.* The Government asserts that the term "manifesto" is appropriate in these circumstances and is not unfairly prejudicial. Dkt. 41 at 39-41.

Nevertheless, the Court finds that use of the term "manifesto" would be unfairly prejudicial. Pursuant to Federal Rule of Evidence 403, the Court can "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Here, the unfair prejudicial effect on Defendant substantially outweighs the little probative value that referring to the document as a "manifesto" would have. Merriam-Webster's Dictionary defines "manifesto" as "a written statement declaring publicly the intentions, motives, or views of its issuer." *Manifesto*, Merriam-Webster Dictionary. As Defendant observes, however, "manifesto" has become a provocative term in the context of mass shootings, carrying strong connotations. *See* Dkt. 42 at 2. Allowing the Government to call the document a

"manifesto" effectively makes a factual determination for the jury regarding Defendant's intent, instead of allowing the jury to deduce the determination from the letter's contents. *See Robinson*, 855 F.3d at 269 ("Courts must resist invading the jury's province by transforming questions of fact into matters of law"). In fact, the Government acknowledges that "[i]t is clear why the civilian witness who saw part of the letter characterized the letter as a 'manifesto.'" Dkt. 51 at 41. This admission supports the notion that the jury could infer from the contents of the letter that the letter is likely a manifesto, as a civilian did just that, without the Government labeling the document as a "manifesto." Because the prejudicial effect on the Defendant of referring to the document as "manifesto" outweighs the probative value of labeling the document as such, the Government and its witnesses[10] will be precluded from identifying the document as a "manifesto."

The parties should refer to the document with non-prejudicial terms and phrases, such as Defendant's writings, musings or the "September 2023 Letter," or using terms and phrases that the Defendant used himself, such as "The Final Letter."

This ruling is made without prejudice to the Government pursuing use of the term "manifesto" if Defendant opens the door to use of the term during either a direct or cross-examination.

B. Motion *in limine* to Preclude Introduction of Objects Seized from Vehicle and Residence

Defendant next asks this Court to exclude the introduction of objects found in his vehicle and residence as irrelevant or as substantially more prejudicial than probative. Dkts. 43 at 1; 95 at 1. Specifically, Defendant seeks the exclusion of "two knives, one can of bear spray, and one can of OC (oleoresin capsicum) spray from Defendant's vehicle" and "one can of bear spray from

---

[10] The Government is expected to instruct its witnesses not to use the term "manifesto."

[Defendant]'s home." Dkt. 95.[11]  In response, the Government asserts that all of this evidence is relevant and is not unfairly prejudicial.  Dkt. 51 at 41-46.

Under Federal Rule of Evidence 402, relevant evidence is admissible at trial.  Fed. R. Evid. 402.  To be relevant, evidence "must be sufficiently related to the charged offense."  *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012) (citation and internal quotation marks omitted).  "Relevance typically presents a low barrier to admissibility."  *United States v. Davis*, No. 23-4370, 2024 WL 368329, at *1 (4th Cir. Jan. 31, 2024) (internal quotations and citations omitted).  "[T]he burden is on the introducing party to establish relevancy."  *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990).

Here, the Government has demonstrated that the items found in Defendant's vehicle are sufficiently related to the charged offenses.  Defendant is charged with attempted obstruction of free exercise of religion involving an attempt to kill and including the use, the attempted use, and threatened use of a dangerous weapon.  The fact that Defendant stored weapons in his vehicle is relevant to the Government's argument that he intended to obstruct people's free exercise of

---

[11] Defendant initially moved to exclude one cannister of pepper spray and one knife found in his vehicle and one cannister of bear spray found at his residence.  Dkt. 41 at 1.  In response, the Government alleged that law enforcement discovered more weapons in Defendant's car and residence than identified in the Motion, emphasizing that Defendant "in fact had *two* knives and *two* cannisters of chemical-irritant spray (one cannister of OC spray and one bear spray) in his vehicle," as well as "another cannister of bear spray and other firearm paraphernalia at his residence."  Dkt 51 at 42.  Defendant countered that the vehicle search warrant return did not reflect the additional items that the Government identified.  Dkt. 58 at 1.  In supplemental briefing submitted on February 4, 2025, the parties stated that they "agree that law enforcement officers claim to have recovered two knives, one can of bear spray, and one can of OC (Oleoresin capsicum) spray from the defendant's vehicle" and "that law enforcement officers claim to have recovered one can of bear spray from the defendant's home."  Dkt. 95.  As such, Defendant moves to preclude each of these items for the reasons articulated in his Motion *in limine* (Dkt. 43) and Reply (Dkt. 58).  *Id.*  The Court notes that its analysis may have been more challenging if only one knife and one cannister of spray had been found in the vehicle.

religious beliefs by force.  Although Defendant may not have carried these items on his person in addition to the weapons he did carry,[12] their presence in his vehicle is still relevant to establishing his intent.  *See United States v. Smith*, 165 F.3d 913, at *4 (4th Cir. 1998) ("Although the evidence of intent is entirely circumstantial, intent is rarely proven by direct evidence.  Rather, the factfinder must draw reasonable inferences from the available facts.  This is so because intent concerns a defendant's state of mind, which-absent a confession-can only be inferred from conduct.").  As the Government observes, "the type of weapons makes all the difference."  Dkt. 51 at 43.  When he entered the Church, Defendant had stored in his vehicle a "knife [that] sported a nearly six inch fixed blade housed in a leather sheath equipped with clips for one's waist," "a folding knife with a multiple-inch blade and hinge mechanism for easy release of the blade," "law-enforcement-grade OC spray," and "Frontiersman Bear Attack Deterrent" that the Government asserts is more dangerous than standard pepper spray.  *Id.*  That Defendant carried these items in his vehicle in addition to the weapons on his person when he entered the church is relevant to proving that he intended to obstruct people's free exercise of religious beliefs by force that day.  Thus, the two knives, can of bear spray, and can of OC spray found in Defendant's vehicle is relevant evidence and admissible at trial.

A more nuanced analysis is required with regard to relevance of the bear spray found in Defendant's residence.  Relevance is best analyzed through the lens as to whether the evidence tends to prove or disprove an essential element of the case.  *See United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998) ("[e]vidence is relevant if it has any tendency to make the existence

---

[12] The Government states that Defendant brought a "loaded firearm, one magazine, and two knives into the Church" and left "an additional magazine, a box of ammunition, two knives, and two cannisters of spray in his car."  Dkt. 51 at 44.

of any determinative fact more probable than it would be absent the evidence"). The Government asserts that the cannister of bear spray is relevant to proving Count Two – the transmission in interstate and foreign commerce of a threat to injure the person of another. Specifically, the Government contends that it is relevant that Defendant possessed dangerous weapons at his residence when he posted the threatening Instagram posts. Dkt. 51 at 44. The Court is unconvinced. The Instagram posts made no reference to bear spray in the captions and it is not alleged that the posts included pictures of the cannister of bear spray. As such, the cannister of bear spray found in Defendant's residence is not sufficiently related to the charged offense and is not relevant. The Government will therefore be precluded from introducing the cannister of bear spray found in Defendant's residence at trial.

The Court now addresses whether the probative value of the objects found in Defendant's vehicle is outweighed by any prejudicial effect. Under Federal Rule of Evidence 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "Evidence is unfairly prejudicial . . . when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006).

Here, Defendant has not demonstrated that the probative value of the items in question is substantially outweighed by unfair prejudice. As the Fourth Circuit has observed, "all evidence suggesting guilt is prejudicial to a defendant." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006). But that kind of general prejudice "is not enough to warrant exclusion of otherwise relevant, admissible evidence." *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008). The fact that two knives, a can of bear spray, and a can of OC spray were found in Defendant's vehicle

is not likely to cause the jury to engage in irrational behavior.  Accordingly, the introduction of these items during trial would not cause substantial unfair prejudice to Defendant.

Given that the objects that were found in the vehicle are relevant and not unfairly prejudicial, Defendant's Motion *in limine* to preclude the two knives, a can of bear spray, and a can of OC spray found in his vehicle is therefore denied.  As such Defendant's Motion is granted insofar as the Government is precluded from introducing the cannister of bear spray found in Defendant's residence and denied as to the objects found in Defendant's vehicle, including the "two knives, one can of bear spray, and one can of OC (Oleoresin capsicum) spray."  Dkt. 95 at 1.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss Count One for Duplicity (Dkt. 36) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Strike Statutory Aggravators from Count One (Dkt. 37) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss Count Two Based on *United States v. Taylor* (Dkt. 38) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Dismiss Count Two based on Duplicity or to Require the Government to Elect (Dkt. 39) is GRANTED-IN-PART and DENIED-IN-PART.  The Motion is granted insofar as the parties are DIRECTED to submit a special verdict form with their proposed jury instructions.  The Motion is denied in all other respects; and it is

FURTHER ORDERED that Defendant's Motion to Strike Notice of Special Findings (Dkt. 40) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Suppress (Dkt. 41) is DENIED; and it is

FURTHER ORDERED that Defendant's *Motion in Limine* to Preclude Use of Term Manifesto (Dkt. 42) is GRANTED. The Government is precluded from using the term "manifesto" to refer to the document discovered in Defendant's residence. The Government is DIRECTED to instruct its witnesses to likewise refrain from using the term "manifesto" to refer to the document discovered in Defendant's residence; and it is

FURTHER ORDERED that Defendant's *Motion in Limine* to Preclude Introduction of Objects Seized from Vehicle and Residence (Dkt. 43) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is granted insofar as the Government is precluded from introducing the cannister of bear spray found in Defendant's residence. The Motion is denied as to the objects found in Defendant's vehicle, including the "two knives, one can of bear spray, and one can of OC (Oleoresin capsicum) spray." Dkt. 95 at 1.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
February 6, 2025

_____ /s/
Rossie D. Alston, Jr.
United States District Judge