IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:24-CR-65 (RDA) |
| RUI JIANG, | |
| Defendant | |

## UNITED STATES' MOTION TO EXCLUDE TESTIMONY FROM DEFENSE EXPERT DR. JAMES ALAN FOX

The United States respectfully moves the Court to exclude the testimony of the defendant's proffered expert, Dr. James Alan Fox. Dr. Fox's proffered testimony fails to meet the reliability and relevance requirements for expert testimony under the Federal Rules of Evidence and improperly usurps the role of the jury by offering conclusions about ultimate issues in the case—including the defendant's mental state during the charged conduct, which is expressly barred by Federal Rule of Evidence 704(b).

### Factual and Procedural Background

On February 10, 2025, defense counsel disclosed to the government their intention to call Dr. James Alan Fox as an expert witness at trial, included as Attachment A. The disclosure identified four areas of testimony, but only offered some examples of the bases for the testimony, not the "bases and reasons for" "all opinions that the defendant will elicit from the witness in the defendant's case-in-chief." *See* Fed. R. Crim. P. 16(b)(1)(C)(iii). On February 11, 2025, the government requested the defense cure the defects in the notice based upon Rule 16(b)(1)(C)(iii). On February 12, 2025, the defense amended their disclosure, included as Attachment B.

According to the amended disclosure, which does not include a report from Dr. Fox, Dr. Fox holds a Ph.D. in sociology, a master's degree in criminology, and a master's degree in statistics. He serves a professor of Criminology, Law, and Public Policy at Northeastern University. Dr. Fox's curriculum vitae reflects a lengthy publication and public speaking history, with a particular focus on the study of mass shootings. The disclosure indicates that Dr. Fox reviewed a limited subset of the materials in this case: other than the Affidavit in Support of Criminal Complaint and Arrest Warrant in *United States v. Jiang*, ECF 8, and the United States' Omnibus Opposition to Defendant's Motions to Dismiss, Motions to Strike, and Motions *in Limine*, ECF 51, neither of which constitutes evidence, Dr. Fox reviewed only 20 pages of discovery, including only two FBI reports of interviews with civilian witnesses, two FBI summary reports, a single three-page supplemental police report from a Fairfax County detective, and the defendant's self-titled "Final Letter."[1]

Based on this limited review of a fraction of the evidence expected to be introduced in this case and Dr. Fox's generalized "education, experience and professional research," (Attachment B at 3), the amended disclosure asserts that Dr. Fox will testify on seven issues, quoted *verbatim* here:

> A. Dr. Fox is expected to testify about behaviors and statements exhibited by most individuals contemplating engaging in a mass-shooting event. Specifically, he will testify that most people who are contemplating a mass-shooting event communicate their intentions, often through social media posts, perform online searches relating to such events and to planning for such an event and/or write what could be characterized as a suicide note.

---

[1] While the government is still finalizing its witness and exhibit lists, it does not anticipate even calling the two civilian witnesses or the one law enforcement witness, and does not anticipate introducing all of the evidence discussed in the FBI summary reports.

B.  Dr. Fox is further expected to testify that most individuals who carry out a mass-shooting event have undertaken detailed planning over the course of weeks or months. Moreover, he will testify that most individuals who carry out such events make specific threats reflecting an underlying grudge against certain individuals, groups or places. He will further testify that the more specific the planning, and the more specific the threats, the more those activities are consistent with most people who carry out a mass-shooting event. He will also testify that most people who carry out such an event after searching for the means to do so more effectively—such as searching for how to acquire an AR-15 assault rifle—attempt to acquire those means before committing the offense.

C.  Dr. Fox is further expected to testify that engaging in short-term planning over a period of one to two days and issuing generic threats filled with confused thoughts and ideas which do not specify a clear grudge or motive against specific people, groups or places are not consistent with the actions of most people who carry out a mass-shooting event.

D.  Dr. Fox is further expected to testify that most individuals who carry out a mass-shooting event—though there are exceptions—begin to commit the act as soon as they have the opportunity, and that most individuals who commit such events do not act tentatively, meandering around the location for a period of ten to fifteen minutes once they have the opportunity to commence the act. He will further testify that most individuals who engage in such events are not compliant and cooperative upon being confronted by security and/or law enforcement.

E.  Dr. Fox is further expected to testify that certain statements and behaviors by Mr. Jiang prior to the events at Park Valley Church on the morning of September 24, 2023 (specifically, those described in paragraph A), were consistent with the conduct of most individuals contemplating a mass-shooting event. Dr. Fox is expected to testify that Mr. Jiang's one to two days of planning and generic threats (which mainly identified God and not specific individuals) were not consistent with the conduct of most individuals contemplating a mass-shooting event. Further, he will testify that Mr. Jiang's searches relating to how to purchase an AR-15, which were not followed by an attempt to obtain one, are inconsistent with the conduct of most people who commit mass shootings.

F.  Dr. Fox is further expected to testify that much of Mr. Jiang's behavior upon arriving at Park Valley Church on the morning of September 24, 2023, is inconsistent with the behavior of most individuals who carry out a mass shooting event. He will testify that Mr. Jiang's actions in meandering around the location for over ten minutes after having the opportunity to commence a mass shooting, and the fact that he was cooperative and compliant upon being engaged by security and law enforcement, are inconsistent with the actions of most people who engage in mass shootings.

G.  Dr. Fox is further expected to testify that, taking all of the above into consideration, Mr. Jiang's behavior is more consistent with an imprecise purpose

3

and a cry for help than with the behavior of most individuals who are determined to carry out a mass shooting.

At various points, the disclosure suggests that Dr. Fox will offer testimony that contradicts and mischaracterizes record evidence and offer opinions well outside his stated area of expertise, including assertions that the defendant's threats were "generic"; that, contrary to evidence of the defendant's own search history, the defendant *did not* attempt to obtain an AR-15; that the defendant was "meandering around" the church after having "the opportunity to commence a mass shooting"; that he was "cooperative and compliant upon being engaged by security and law enforcement" (despite being evasive and dishonest with them); and that Mr. Jiang's behavior was "more consistent with an imprecise purpose and a cry for help than with the behavior of most individuals who are determined to carry out a mass shooting." *See generally* Attachment B.

## Legal Standard

"It's the district court's job to 'decide any preliminary question about whether a witness is qualified.'" *Le Doux v. Western Express, Inc.*, 126 F.4th 978, 983-84 (4th Cir. 2025) (quoting Fed. R. Evid. 104(a)). The Federal Rules of Evidence limit expert testimony in two crucial respects. First, Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Second, Rule 704(b) explicitly prohibits expert witnesses from opining on "whether the defendant did or did not have the mental state . . . that constitutes an element of the crime charged."

With respect to Rule 702, the Rule provides that no person may testify as an expert witness unless a court first determines that the witness has the requisite expertise *and* that the

4

proffered expert meets four separate requirements: (1) their knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," (2) their testimony is "based on sufficient facts or data," (3) their testimony is "the product of reliable principles and methods," and (4) their opinion "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 "'imposes a special gatekeeping obligation on the trial judge' to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (alteration and emphasis in original) (quoting *Nease v. Ford Motor Co.*, 848 F.2d 219, 229-30 (4th Cir. 2017)). This role is crucial, because the Federal Rules "grant expert witnesses testimonial latitude unavailable to other witnesses" on the assumption that their testimony will be reliable. *Kumho Tire Co.*, 528 U.S. at 148. As the Supreme Court has observed, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595 (quotation omitted). Expert evidence "carries a certain aura that might lead a jury to attach more significance to the testimony than is reasonably warranted." *United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003).

Apart from its technical requirements, Rule 702 incorporates an expertise-specific relevancy concept, often referred to as "fit" or "helpfulness"; that is, the testimony must help "the trier of fact to understand the evidence or to determine a fact in issue." "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert*, 509 U.S. at 591. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 591-92. "Expert testimony rooted in 'subjective belief or unsupported speculation' does not suffice."

5

*Zuckerman v. Wal-Mart Stores East, L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (quoting *Daubert*, 509 U.S. at 599).

Relatedly, a court should exclude "expert testimony related to matters which are obviously within the common knowledge of jurors." *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (internal quotation marks omitted); *see also*, *e.g.*, *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (noting that that court has "consistently held . . . that expert testimony that usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it . . . by definition does not aid the jury in making a decision" (internal citations and quotations omitted)). That is especially so when the expert witness infringes on the jury's role to determine a defendant's intent or mental state. Rule 704(b) explicitly prohibits expert witnesses from opining on "whether the defendant did or did not have the mental state . . . that constitutes an element of the crime charged." Such "matters are for the trier of fact alone." *Id.* While Rule 704(b) permits experts to testify to circumstantial evidence about perpetrator profiles, it does not permit experts to invade the province of the fact finder and testify about whether the defendant fits that profile. *Diaz v. United States*, 602 U.S. 526, 533-34 (2024).

Even if expert testimony meets the specific requirements laid out in Rules 702 and 704(b), "[e]xpert testimony also must satisfy Rule 403, which allows the court to exclude relevant evidence if its probative value is substantially outweighed by a countervailing factor such as unfair prejudice, misleading the jury, or needlessly presenting cumulative evidence." *Le Doux*, 126 F.4th at 984 (citing Fed. R. Evid. 403). Indeed, because of the difficulties in evaluating expert testimony detailed above, "a trial judge should 'exercise more control over lay witnesses' in applying Rule 403." *Id.* (quoting *Daubert*, 509 U.S. at 595) (cleaned up).

Finally, at the threshold, Federal Rule of Criminal Procedure 16 aids the government and Court in evaluating the admissibility of expert testimony under Rule 702, requiring the defense to provide "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." Fed. R. Crim. P. 16(b)(1)(C)(iii). Rule 16(d)(2) allows the district court to preclude expert testimony where the disclosure is insufficient. Fed. R. Crim. P. 16(d)(2); *United States v. Kaur*, No. 3:23-cr-92, 2023 WL 8654914, at *6 (E.D. Va. Dec. 13, 2023).

The proponent of expert testimony bears the burden of establishing its admissibility. *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 798 (E.D. Va. 2013) (citing *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001)). Ultimately, "district courts are to exercise their sound discretion in all rulings related to the admission and exclusion of evidence, and [the Fourth Circuit] will not reverse the decision to exclude such evidence absent abuse of that discretion." *United States v. Rouse*, No. 22-4479, 2024 WL 2044630, at *2 (4th Cir. May 8, 2024) (citing *United States v. Holmes*, 670 F.3d 586, 598 (4th Cir. 2012)).

## Argument

The defendant's expert should be excluded. Dr. Fox's proffered testimony can be broken down into two categories, each problematic in its own way. The first category—the opinions and reasons detailed in paragraphs A, B, C, and D (what the government will characterize as "general mass shooter profile testimony")—is inadmissible as unreliable and unhelpful under *Daubert* and *Kumho Tire*. This category of testimony is also insufficiently noticed under Rule 16. *See* Fed. R. Crim. P. 16, Notes of Advisory Committee on Rules—2022 Amendment (warranting more to "ensure that [the government] receive[s] adequate information about the content of the witness's testimony and potential impeachment"). The second category—the opinions and reasons detailed

in Paragraphs E, F, and G, that seek to improperly apply the mass shooter profile to this particular defendant—will not aid the trier of fact in any expert way, are unreliable based on the limited material relied on to formulate them, and run afoul of Rule 704(b) and the express holding of *Diaz v. United States*, 602 U.S. 526 (2024).

**A. The proffered "mass shooter profile" testimony as noticed in Paragraphs A, B, C, and D should be excluded as unreliable and unhelpful to the jury.**

As noticed in the defendant's expert disclosure, the proffered general mass shooter profile testimony is excludable as both unreliable and unhelpful to the decisions the jury must make. Dr. Fox appears to be an expert on past mass shootings, and some of the topics of his testimony appear to be directly linked to his area of expertise and conceivably could be proper circumstantial evidence for the jury to consider when evaluating this case. The problem with the opinions and reasons detailed in paragraphs A, B, C, and D—which includes assertions about the "behaviors and statements exhibited by most individuals contemplating engaging in a mass-shooting event," that "most individuals who carry out a mass-shooting event have undertaken detailed planning over the course of weeks or months" and "make specific threats reflecting an underlying grudge," that "the more specific the planning, and . . . threats, the more those activities are consistent with people who carry out a mass-shooting event, that "most people who carry out such an event after searching for the means to do so more effectively . . . attempt to acquire those means committing the offense," that "short-term planning . . . and issuing generic threats . . . are not consistent with the actions of most people who carry out a mass-shooting event," and that "most individuals who carry out a mass-shooting event . . . begin to commit the act as soon as they have the opportunity, . . . do not act tentatively" and "are not compliant and cooperative upon being confronted" (Attachment B at paragraphs A, B, C, and D)—is that the amended disclosure, while assuredly made in a good faith effort to comply with Rule 16 and the

government's request, nonetheless falls short of what Rule 16 requires. Most crucially, Dr. Fox cannot testify to what "most people" do without disclosing the evidentiary basis for those conclusions. Dr. Fox is a statistician by training, but the defense has not disclosed the data upon which Dr. Fox is relying to make these assertions.

Presumably the proffered profile testimony is based on past mass shooting events, but, without more, the government and the Court are left to wonder about critical facts necessary to assessing whether this is at all appropriate "scientific knowledge." Nor is the disclosure sufficient for the government to adequately cross examine Dr. Fox, one of the stated purposes of expert disclosures under Rule 16. The disclosure gives no indication of the scientific and statistical basis for the profile. For example, it is unclear whether "most people" means 50.01% of mass shooters or 99.99% of mass shooters. Nor does the disclosure give any indication of whether Dr. Fox is only looking at mass shootings of the type that the government has charged the defendant with planning and attempting here or if Dr. Fox is including in his statistical analysis entirely inapposite categories of mass shootings, such as those associated with gangland and domestic violence. And, apart from the *type* of underlying data the proffered testimony relies upon, there remain integral questions regarding the *assessments* of that data that form the testimony's conclusions, including about the methodology, the peer-review process, the replicability, and more.

These shortcomings are particularly concerning with respect to the testimony detailed in paragraph D. Dr. Fox is expected to testify that mass shooters generally begin to commit the act as soon as they have the opportunity. This testimony has a pronounced risk of misleading and confusing the jury and, at this time, should be additionally barred under Federal Rule of Evidence 403. *See United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995) ("otherwise

admissible [expert] evidence may be properly excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury"); *United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003). This case is not about a mass shooting; it is about an attempted mass shooting, a mass shooting *that did not occur* because law enforcement and security intervened. It is not clear from the disclosure whether Dr. Fox has any data about intended mass shootings *that did not occur*. Further, it is unclear whether the mass shootings Dr. Fox has reviewed bear any meaningful similarities to the attempted mass shooting charged here, such as attempted mass shootings that were foiled because of certain suspicious behaviors, like lingering in the area before carrying out the attack. It is reasonable to assume such data, which would be based on the absence of a significant event, would be extraordinarily hard to collect in an accurate way. If true, there is reason to suspect such data is unreliable and testimony based on it irrelevant. If Dr. Fox has studied such a phenomenon, it has not been disclosed to the government.

To the extent this testimony seeks to lay a foundation for an argument that the defendant was inevitably going to be caught before the shooting began, such an argument is barred by Fourth Circuit precedent. Whether the defendant was going to succeed in carrying out a mass shooting is not even relevant to this case. The government has no burden to prove that a mass shooting was inevitable—an attempt is proven through proof beyond a reasonable doubt that the defendant intended to commit a crime and took a substantial step in furtherance of that crime that strongly corroborates that intent. *See United States v. Haas*, 986 F.3d 467, 478 (4th Cir. 2021). Implying it was inevitable that the defendant would be caught before opening fire is not proper argument to the jury, is irrelevant to any element of the charges or any defense, and is certainly not a proper basis for expert testimony. *See United States v. Hamrick*, 43 F.3d 877, 885 (4th Cir.

1995) (joining "those circuits that have expressly held that [factual impossibility] is not a defense to an attempt crime").

Even if Dr. Fox could identify data about thwarted mass shootings or somehow connect data about completed mass shootings to attempted ones, the testimony is facially unreliable. Paragraph D is devoid of any information from Dr. Fox about the exceptions to his assertion. *See Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (district court "correctly barred" expert's testimony when he rejected data and testimony that "contradicted his opinion" and failed to explain why; the "selective use" of "cherry-picked" facts does not satisfy *Daubert*); *Zeolla v. Ford Motor Co.*, No. 09-40106-FDS, 2013 WL 308968, at *9 (D. Mass. Jan. 24, 2013) ("[E]xperts cannot simply ignore contradictory evidence; they are not allowed to pick and choose the facts they find helpful and to pretend that the others do not exist.").

And there are *significant* exceptions to Dr. Fox's assertion. In 2015, Dylann Roof worshipped for 45 minutes with parishioners before he shot eleven people with a handgun, killing nine of them, inside the Emanuel African Methodist Episcopal Church in Charleston, South Carolina. *United States v. Roof*, 10 F.4th 314, 331-32 (4th Cir. 2021). In 2019, Patrick Crusius killed 23 people and injured 22 more in a mass shooting at an El Paso, Texas, Walmart. Plea Agreement, *United States v. Patrick Crusius*, 3:20-cr-00389-DCG, WDTX, ECF 259. Crusius had been inside the Walmart earlier that morning conducting reconnaissance for his attack. Alfredo Corchado, Cassandra Jaramillo and James Barragán, "Every Day is a Struggle:" El Paso, One Year Later, Dallas Morning News, July 31, 2020.

Despite expressly admitting that "there are exceptions" to this assertion, Dr. Fox provides no further details on those exceptions, nor does he explain them. Even assuming data in support of this assertion exists, Dr. Fox's failure to grapple with contradictory data underscores the

11

unreliability of this expert opinion. Permitting Dr. Fox to testify pursuant to the generalized

assertions in Paragraph D obliges the government to explore those exceptions and others on

cross-examination.

At its essence, the defendant's proffered profile testimony aims to present Dr. Fox's

personal formula for mass shooters as universally accepted although it lacks any disclosed

scientific or tested basis or methodology. *See Daubert*, 509 U.S. at 589-90 ("The subject of an

expert's testimony must be scientific knowledge. The adjective 'scientific' implies a grounding

in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than

subjective belief or unsupported speculation. The term applies to any body of known facts or to

any body of ideas inferred from such facts or accepted as truths on good grounds.") (cleaned up).

The additional information the government is requesting with respect to the opinions and reasons

detailed in paragraphs A, B, C, and D should be knowable and must be disclosed under Rule 16

to aid this Court in evaluating, pursuant to Federal Rule of Evidence 702, whether these

assertions are based on conjecture or based on statistical data that is relevant to the nature of the

mass shooting the defendant is charged with attempting here. Without a report and any details

underlying the expert witness's proffered testimony on mass shooter profiles, the Court cannot

determine whether it meets the required thresholds under the Rules of Evidence, and the

testimony should be excluded.

**B. The proffered testimony in Paragraphs E, F, and G are speculative, argumentative, and barred by controlling authority, and should be excluded.**

Turning to the proffered opinions and reasons detailed in paragraphs E, F, G, they are

wholly and incurably improper and must be excluded. The assertions include that "Mr. Jiang's

one to two days of planning and generic threats;" his "searches relating to how to purchase an

AR-15, which were not followed by an attempt to obtain one;" and his "behavior upon arriving

at the Park Valley Church" were "not consistent with the conduct of most individuals contemplating a mass-shooting event." Attachment B at paragraphs E and F. They also include the bald assertion that "Mr. Jiang's behavior is more consistent with an imprecise purpose and a cry for help than with the behavior of most individuals who are determined to carry out a mass shooting." *Id*. at paragraph G. These assertions are speculative, constitute argument masquerading as expert testimony, are beyond the scope of Dr. Fox's expertise, and are precluded by Federal Rule of Evidence Rule 704(b) and the express holding of the Supreme Court's decision in *Diaz v. United States*, 602 U.S. 526 (2024).

In the email conveying the amended disclosure, the defense cited to *Diaz* as the basis for admissibility. The defense is correct that *Diaz* is not just relevant but dispositive, just not in the way the defense alleges. Its express holding *prohibits* much of the testimony the defense intends to elicit here. In *Diaz*, the defendant was convicted of trafficking drugs across the United States-Mexico border. *Id.* at 528. At trial, Diaz asserted as a defense that she did not know the vehicle she was driving contained drugs. *Id.* at 529. In response, the government elicited testimony from a federal agent that "most couriers know they are transporting drugs." *Id.* at 530. On appeal, Diaz argued that this testimony violated Federal Rule of Evidence 704(b), which prohibits expert witnesses from "stat[ing] an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense" because "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b).

The Supreme Court disagreed, because the witness "did not express an opinion about whether Diaz herself knowingly transported [drugs]." *Id.* at 534. Rather, the witness testified about "the knowledge of *most* drug couriers."[2] *Id.* His testimony therefore amounted to

---

[2] Unlike here, the question of what "most" means was not before the Supreme Court in *Diaz*.

"evidence for the jury to consider or reject," which left the jury "well aware that unknowing couriers exist and that there was evidence to suggest Diaz could be one of them." *Id.* at 535. The jury presumably considered that possibility but nevertheless concluded that Diaz knowingly transported the drugs. Because "[t]he jury alone drew that conclusion," the testimony was permissible. *Id.*

Paragraphs E, F, and G would have Dr. Fox go well beyond any permissible "profile" testimony consistent with *Diaz* and have Dr. Fox assess whether the defendant fits the undefined profile addressed above. These opinions seek to tell the jury whether Dr. Fox's understanding of various actions by the defendant—from the length of his planning to his efforts to procure more powerful weapons to his actions at the church—fit the profile of someone who *intends* to carry out a mass shooting. Each opinion draws on Dr. Fox's profile testimony and Dr. Fox's extremely narrow understanding of the evidence in this case and seeks to overlay that evidence atop Dr. Fox's profile. Such analysis may be proper argument, but it is up to the jury to decide whether the defendant's actions fit Dr. Fox's profile, how so, and whether that fit is exculpatory, inculpatory, or irrelevant. These opinions and reasons must be excluded under *Diaz* and the well-established principle that a witness's testimony should not invade the province of the factfinder, which includes weighing evidence and determining intent. *See United States v. Herrera*, No. 23-13706, 2025 WL 40265, at *4 (11th Cir. Jan. 7, 2025); *United States v. Dinkins*, 691 F.3d 358, 387 (4th Cir. 2012).

The proffered testimony is especially problematic given Dr. Fox's limited understanding of the facts of this case. As noted, other than reviewing the complaint and a government filing, neither of which is evidence, Dr. Fox reviewed a whole 20 pages of discovery, including three statements from witnesses who are not expected to testify, two FBI summaries that reflect some,

but not all, admissible evidence and contain evidence that that the government does not intend to introduce, and the defendant's "Final Letter." This is an extraordinarily small snapshot, one that renders Dr. Fox's opinions about the defendant's actions unhelpful and even confusing to the jury.

And the opinions are replete with questionable and argumentative characterizations of the evidence in this case. For example, Dr. Fox asserts that the defendant's research into AR-15s was "not followed by an attempt to obtain [an AR-15]," yet the government will introduce evidence that the defendant's searches were not just research into an AR-15 but into waiting periods and stores that sold them, including on the morning of the shooting when those stores were closed. While the defense can plainly argue these actions were not an attempt to procure an AR-15, they cannot launder that argument through the testimony of an expert witness. *See United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1252-53 (D.N.M. 2015) (53 (reasoning that when expert testimony is based on "'expertise' rooted in the facts of the case being tried, [the expert] is effectively arguing the case as a mouthpiece for counsel," and "effectively serves to bolster counsel's arguments about how the jury should interpret the case's facts"). "[I]t is not helpful to the jury when expert testimony gives lay testimony interpreting the facts of the case or 'address[ing] matters that [are] equally within the competence of the jurors to understand and decide.'" *Youngberg v. McKeough*, 534 F. App'x 471, 479 (6th Cir. 2013) (alterations in original) (quoting *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1272 (6th Cir. 1988)); *see also United States v. Kilpatrick*, 798 F.3d 365, 380 (6th Cir. 2015) ("It is not 'helpful' when a witness, lay or expert, forms conclusions for a jury that the jurors are competent to reach on their own."); *United States v. McDonnell*, 792 F.3d 478, (4th Cir. 2015) (affirming exclusion of expert testimony that statement was vague and complex because jurors were capable of reading and

15

assessing the complexity of the statements themselves), *abrogated on other grounds by McDonnell v. United States*, 579 U.S. 550 (2016); *United States v. Wilson*, 484 F.3d 267, 278 (4th Cir. 2007) (holding that district court erred when it failed to exclude expert testimony "interpret[ing] language that needed no interpretation").

This improper characterization of facts pervades paragraphs E and D of the disclosure, including the factually inaccurate testimony that Jiang only planned the shooting for "one or two days"; the improper characterization of Jiang's threats as "generic"; that the defendant was "meandering around" Park Valley Church, as opposed to conducting reconnaissance like Patrick Crusius or awaiting his precise moment to attack like Dylann Roof; and that the defendant was "cooperative and compliant upon being engaged by security and law enforcement," despite being evasive and flat out dishonest in response to police and security questioning about his intentions and what he had concealed on his person. Again, properly predicated, the defense might make these arguments in their closing, but they cannot enlist an expert to mask argument as expert evidence—the very concern at the heart of the rules guardrailing expert testimony and requiring district courts to serve as gatekeepers of such witnesses. That is particularly so where, as here, the expert has barely reviewed the evidence in this case.

The most extraordinary aspect of Dr. Fox's proposed testimony lies in paragraph G, proffering "expert" testimony that the defendant's actions were "more consistent with an imprecise purpose and a cry for help than with the behavior of most individuals who are determined to carry out a mass shooting." "Imprecise purpose" is another way of saying that the defendant did not have specific purpose, i.e. intent, to carry out a violent act. *Compare* Attachment A, at I.(d) with Attachment B, at I.(g) (removing reference to the defendant's "intention to carry out a violent act" and rewording it to be about "an imprecise purpose"

16

inconsistent with that of "most individuals who are determined to carry out a mass shooting"). Rule 704 expressly precludes testimony about a defendant's intent. *See* Fed. R. Evid. 704(b). The defense appears to be aware of this dispositive issue, having removed both references to "determination," a synonym for "intention," that appeared in the first disclosure from the amended disclosure while keeping the crux of the proffered testimony the same. To the extent there is any daylight between those two phrases (and there is not in this context), the jury will not see it and the testimony should be additionally barred under Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595 (reiterating that Rule 403 "permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury'" and that courts "exercise[] more control" in making this determination "over experts than over lay witnesses" (quoting Fed. R. Evid. 403)).

Paragraph G's improper opinions and reasons only gets more impermissible, however, with the proffer that Dr. Fox will testify that the defendant's actions were a "cry for help." Not only does this testimony again impermissibly opine on the defendant's intent, *see* Fed. R. Evid 704(b), but it directly runs afoul of Federal Rule of Evidence 702 and also implicates 18 U.S.C. § 17, which bars diminished capacity defenses. It is inadmissible on that basis alone. Further, even if it were a permissible expert opinion, Dr. Fox is not qualified to provide it. For all his expertise, Dr. Fox is not a psychiatrist or psychologist, nor does he have any basis whatsoever to opine on whether a person's actions were a "cry for help." Even if he were qualified to so opine on the defendant's mental state, this testimony is indistinguishable from a statutorily-controlled diminished capacity defense, suggesting that the defendant was in mental distress and not intending to carry out a mass shooting.

Additionally, Dr. Fox's proffered testimony makes no effort to explain why it cannot be simultaneously true that the defendant was in a mental health crisis and also intended to carry out a mass shooting. In any event, whether the defendant's actions were a "cry for help" is also irrelevant to the jury's consideration under Rule 402, as it does not go to any element of the charged offenses or to any permissible defense. Whether or not it was a cry for help does not bear on whether the defendant intended to carry out a mass shooting and took and substantial step in furtherance of that plan.

## Conclusion

At bottom, the entire scope of Dr. Fox's testimony appears to be about cherry-picking facts, both about mass shooting events and about this case, to influence the jury's evaluation of the defendant's intent and the Court should exclude Dr. Fox's testimony in whole. As currently noticed, the proffered testimony about what "most" mass shooters do is inadmissible and should be excluded under Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702. The remaining proffered testimony in paragraphs E, F, and G, which are replete with factual inaccuracies and argumentative assertions, should be excluded in their entirety under Federal Rules of Evidence 402, 403, 702, 704(b), and 18 U.S.C. § 17.

Respectfully submitted,


Erik S. Seibert
United States Attorney

 /s/ Troy A. Edwards, Jr.
Troy A. Edwards, Jr.
Nicholas Durham
Assistant United States Attorneys
N.Y. Bar No. 5453741
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3746
Troy.edwards@usdoj.gov
Nicholas.durham@usdoj.gov


Kathleen Wolfe
Deputy Assistant Attorney General
Civil Rights Division

 /s/ Kyle Boynton
Kyle Boynton
Trial Attorney
Criminal Section
950 Pennsylvania Ave. NW
Washington, DC 20530
Tel: (202) 598-0449
Kyle.boynton@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2025, I filed the foregoing with the Office of the Clerk of Court electronically using the CM/ECF system, which will automatically send a notification of such filing to all counsel of record.

/s/ Kyle Boynton
Kyle Boynton
Trial Attorney
Civil Rights Division