IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:24-cr-65 (RDA) |
| | ) | |
| RUI JIANG, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on the Government's Motion to Exclude Expert (Dkt. 98) and Defendant Rui Jiang's ("Defendant") Motion *in Limine* to Preclude Reference to the Standards and Bases for Emergency Custody and Temporary Detention Orders (Dkt. 107). Considering the Motions together with Defendant's Opposition to the Motion to Exclude Expert (Dkt. 103), and the argument heard at the February 26, 2025 Pretrial Hearing, the Court GRANTS-IN-PART and DENIES-IN-PART the Government's Motion to Exclude Expert and GRANTS Defendant's Motion *in Limine* for the reasons that follow.

I. BACKGROUND[1]

Defendant was indicted on March 27, 2024. On April 3, 2024, Defendant was arraigned in this Court on an Indictment charging Defendant with the following offenses: (1) attempted obstruction of free exercise of religious beliefs; (2) use of firearm during and in relation to a crime of violence; and (3) transmitting in interstate and foreign commerce a threat to injure the person of another. Dkt. 20. A jury trial in this matter is set for March 3, 2025, and a final pretrial hearing was held on February 26, 2025.

---

[1] The Court sets forth only those facts that are relevant to deciding the pending motions before it.

Counsel for Defendant disclosed to the Government their intention to call Dr. James Alan Fox ("Dr. Fox") as an expert on February 10, 2025. Dkt. 98 at 1; Dkt. 98-1 ("Initial Disclosure"). On February 11, 2025, the Government requested that Defendant cure defects in the notice based on Rule 16(b)(1)(C)(iii), and on February 12, 2025, Defendant amended the disclosure. Dkt. 98 at 1; Dkt 98-2 ("Amended Disclosure"). The Amended Disclosure included "a summary of Dr. Fox's expected testimony (including his opinions, the bases and reasons therefor, his qualifications, and his prior publications and testimony)." Dkt. 98-2 at 1.

On February 18, 2025, the Government filed its Motion to Exclude Expert, requesting that the Court exclude Dr. Fox's proffered testimony because it "fails to meet the reliability and relevance requirements for expert testimony under the Federal Rules of Evidence and improperly usurps the role of the jury by offering conclusions about ultimate issues in the case." Dkt. 98 at 1. Defendant filed an Opposition to the Government's Motion on February 21, 2025. Dkt. 103.

On February 24, 2025, Defendant filed its Motion *in limine* to Preclude Reference to the Standards and Bases for Emergency Custody and Temporary Detention Orders, because such testimony is inadmissible. Dkt. 107. The Government has not filed an opposition and has indicated that it generally agrees with the remedy proposed by Defendant in its Motion *in limine*.

The Court heard argument on the pending motions during the February 26, 2025 Pretrial Hearing. Dkt. 110.

## II. PRE-TRIAL MOTION AND MOTION *IN LIMINE*

As indicated, the Government has filed a Motion to Exclude Expert and Defendant has filed a Motion *in limine*. Dkts. 98; 107. The Court will address each motion in turn.

A.  Motion to Exclude Expert

Defendant provided a 48-page expert disclosure to advise the Government that the defense expects to call Dr. Fox as an expert witness pursuant to Fed. R. Evid. 702.  The disclosure included a summary of Dr. Fox's "opinions, the bases and reasons therefor, his qualifications, and his prior publications and testimony," pursuant to Fed. R. Crim. P. 16.  Dkt. 98-2 at 1.

The Opinions and Reasons section of the Amended Disclosure sets forth seven paragraphs regarding the scope of Dr. Fox's testimony; however, Defendant has withdrawn the last paragraph. The paragraphs are summarized below:

- <u>Paragraph A</u>: How most individuals contemplating engaging in a mass-shooting event communicate their intentions.

- <u>Paragraph B</u>: How most individuals contemplating engaging in a mass-shooting event plan.

- <u>Paragraph C</u>: Generally explaining that most individuals who carry out a mass shooting event do not engage in short-term planning or issue generic threats.

- <u>Paragraph D</u>: How most perpetrators of a mass-shooting event begin to commit the act as soon as they have the opportunity and are not compliant/cooperative upon confrontation with security/law enforcement.

- <u>Paragraph E</u>: Whether Defendant's actions before traveling to Park Valley Church were consistent or inconsistent with most perpetrators.

- <u>Paragraph F</u>: Whether Defendant's actions after arriving at Park Valley Church were consistent or inconsistent with most perpetrators.

- <u>Paragraph G</u>: Withdrawn.

The Government is moving to exclude Dr. Fox's testimony, asserting that the testimony proposed in Paragraphs A, B, C, and D is not relevant or reliable, and that the testimony proposed in Paragraphs E and F usurps the role of the jury by opining on Defendant's mental state.  Dkt. 98.

i.    Legal Standard

Federal Rule of Criminal Procedure 16 requires that a defendant's disclosure for an expert witness contain (1) "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief"; (2) "the bases and reasons for them;" (3) "the witness's qualifications, including a list of all publications authored in the previous 10 years"; and (4) "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."  Fed. R. Crim. P. 16(b)(1)(C)(iii).  Rule 16(d)(2) allows the district court to preclude expert testimony where the disclosure is insufficient.  Fed. R. Crim. P. 16(d)(2).

Federal Rule of Evidence 702 permits a witness who is qualified as an expert by knowledge, skill, experience, training, or education to testify if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 "imposes a special obligation upon a trial judge to 'ensure that [expert] testimony . . . is not only relevant, but reliable.'"  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).  Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue," which "goes primarily to relevance."  *Daubert*, 509 U.S. at 591.  Rule 702 also requires "a reliable basis in the knowledge and experience of [the relevant] discipline."  *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592).  In determining reliability, courts consider whether a "theory or technique . . . can be (and has been) tested, whether it has been subjected to peer review and publication . . . and whether it has attracted widespread acceptance within a relevant scientific community.  The inquiry is a flexible one, and its focus must be solely

on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 580. The *Daubert* factors "do not constitute a definitive checklist," as a court's "gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150 (cleaned up) (explaining that "the relevant reliability concerns may focus upon personal knowledge or experience").

Federal Rule of Evidence 704(b) prohibits expert witnesses from opining on "whether the defendant did or did not have the mental state . . . that constitutes an element of the crime charged," because "[t]hose matters are for the trier of fact alone." Fed. R. Evid. 704(b).

## ii.    Analysis

The Government moves to exclude the testimony of Dr. Fox, arguing (1) that Defendant's Amended Disclosure does not satisfy the requirements of Fed. R. Crim. P. 16; (2) that the proffered testimony falls short of the relevance and reliability requirements of Fed. R. Evid. 702; and (3) that the testimony improperly offers conclusions about Defendant's mental state in violation of Fed. R. Evid. 704(b). Dkt. 98 at 1. The Court will address each argument in turn.

As a threshold matter, Defendant's Amended Disclosure satisfies the requirements of Fed. R. Crim. P. 16. The Government argues that Defendant's Amended Disclosure falls short of Rule 16's requirements because Dr. Fox must disclose the evidentiary basis for his conclusions of what "most people" do. The Government's argument is unpersuasive. Counsel for Defendant provides a statement of the opinions that will be elicited from Dr. Fox, the bases and reasons for those opinions, Dr. Fox's qualifications, and other cases in which Dr. Fox has testified as an expert, thereby satisfying Rule 16's requirements for expert disclosure. The bases for Dr. Fox's opinions provided in the Amended Disclosure, namely "his education, experience and professional research

as a Professor of Criminology, Law and Public Policy," are sufficient,[2] particularly given that his education, experience, and professional research are expanded upon in the lengthy curriculum vitae provided.  Dr. Fox has written extensively on the subjects of "serial murder, mass shootings, intimate partner homicide, youth crime, school and campus violence, workplace violence, and capital punishment, and was the founding editor of the Journal of Quantitative Criminology."  Dkt. 98-2 at 5.  He has written 18 books (including *Extreme Killing: Understanding Serial and Mass Murder*, *The Will to Kill: Making Sense of Senseless Murder*, and *Violence and Security on Campus: From Preschool through College*), published dozens of journal and magazine articles, and "published over 300 op-ed columns in newspapers around the country, including the *New York Times*, *Washington Post*, and *Los Angeles Times*."  *Id.*  He also maintains the *Associated Press/USA Today/Northeastern University Mass Killing Database*. *Id.*  Further, he has given over 100 keynote or campus-wide addresses, had 16 appearances before the U.S. Congress, served on former President Clinton's advisory committee on school shootings, given private briefings to former Attorney General Reno on trends in violence, and given presentations for former Attorney

---

[2] Defendants' Amended Disclosure states:

The bases for Dr. Fox's opinions are his education, experience and professional research as a Professor of Criminology, Law and Public Policy at Northeastern University as well as his review of the following documents: i) Affidavit in Support of Criminal Complaint and Arrest Warrant in United States v. Jiang (1:24-cr-64, ECF 8); ii) United States' Omnibus Opposition to Defendant's Motions to Dismiss, Motions to Strike, and Motions in Limine (1:24-cr-65, ECF 51); iii) GOV 00000560-62 (FBI Report of Interview of Roger White); iv) GOV 00002382-84 (FBI summary of review of defendant's phone); v) GOV 00003406-08 (Police Department narrative of events of September 24, 2023 by Anthony Javid; vi) GOV 00003528-29 (FBI Report of Interview of Barry White); vii) GOV 00002805 (letter dated September 24, 2023); viii) GOV 00002392-99 (FBI summary of defendant's statements on social media).

Dkt. 98-2 at 3.

General Eric Holder.  *Id.*  The extensive research Dr. Fox has done certainly gives him a basis to conclude, based on his education, research and experience, how "most people" who engage in mass killings conduct themselves.  Moreover, the Government provided Defendant with a similar model notice[3] from a different case that was approved by U.S. District Judge Michael S. Nachmanoff.  Case No. 1:22-cr-178-MSN.  The Government also gave a comparable notice for Dr. Fox in a similar case in the Western District of Texas.  *Holcombe v. United States*, case no. 5:18-cv-555, W.D.TX, Dkt. 237.[4]  As required by Fed. R. Civ. P. 26, Dr. Fox provided a written report in the *Holcombe* case, but Fed. R. Crim. P. 16 does not require experts to compose a written report, and Defendant states that the Government did not request one.  Dkt. 103 at 1-2 n.1. Accordingly, the Court finds that Defendant's Amended Disclosure satisfies the requirements of Fed. R. Crim. P. 16.

The Court next finds that Paragraphs A, B, C, and D of Dr. Fox's testimony are both relevant and reliable.  The testimony is relevant because a central issue at trial will be whether Defendant intended to shoot individuals at Park Valley Church, and the Defense states in Paragraphs A, B, C, and D that Dr. Fox's testimony will address how most individuals who contemplate engaging in a mass shooting behave.  The Supreme Court's decision in *Diaz v. United States*, 602 U.S. 526 (2024), is instructive.  In *Diaz*, the defendant was convicted of trafficking

_____

[3] The model notice provided by the Government to Defendant states: "My opinions are based upon my education, training, and experience in forensic anthropology.  Additionally, I performed a forensic assessment of the remains, and my conclusions are based upon the observations I made during that assessment."  Dkt. 103 at 8-9.

[4] The notice provided by the Government for Dr. Fox in the Western District of Texas case states: "Dr. Fox will testify based on his skills, knowledge, experience, training and education, which can be found in his Curriculum Vitae, which has been served on all parties separately. Dr. Fox's expert opinions can be found in greater detail in his report, which has been served separately."  *Holcombe v. United States*, case no. 5:18cv555, W.D.TX, Dkt. 237.

drugs across the border between the United Staes and Mexico. *Id.* At trial, the defendant asserted that the drugs smuggled in her vehicle were placed there without her knowledge. *Id.* To rebut this defense, the government called a Special Agent as an expert witness to testify that "in most circumstances, the driver knows they are hired . . . to take the drugs from point A to point B." *Id.* at 530. As the Government does here, the defendant challenged the expert witness's testimony as an impermissible opinion on the defendant's state of mind under Rule 704(b). *Id.* at 531. The Supreme Court held that "Rule 704(b) applies only to opinions about the defendant. Because Agent Flood did not express an opinion about whether Diaz herself knowingly transported methamphetamine, his testimony did not violate Rule 704(b). Agent Flood instead testified about the knowledge of *most* drug couriers." *Id.* at 534. The jury was then left to decide the ultimate issue of Diaz's mental state using this information. *Id.* at 536. *Diaz* therefore permits testimony regarding how "most people" committing a particular offense conduct themselves, so long as the expert does not opine on the defendant's specific intent or mental state. Thus, Dr. Fox's testimony regarding how "most" individuals who carry out mass shootings behave will help the jury to understand the evidence presented and to determine a fact in issue—namely, whether Defendant's actions that day reflected the intention to carry out a mass shooting—while reserving that ultimate issue of mental state to the jury.

Further, the proposed testimony of Paragraphs A, B, C, and D appears reliable because, as discussed, it is not disputed that Dr. Fox's background and extensive research demonstrates that he is an expert in the area of mass shootings. Dr. Fox has studied mass shooting events and the perpetrators of mass shooting events for decades, and as a scholar and organizer of the *Associated Press/USA Today/Northeastern University Mass Killing Database*, Dr. Fox studies the details of these events, analyzes them, and often publishes his opinion. Dkt. 103 at 6-7. As Defendant notes,

> "[t]he government itself has previously noticed him as an expert on 'criminology, particularly in the area of homicide, mass murders, and serial killers; statistical methods' in a case involving a mass shooting event at a church—exactly the conduct that the government alleges that Mr. Jiang was attempting. . . .  In addition to serving as an expert on mass shootings put forth by the United States in federal courts, Dr. Fox has testified to Congress, served on President Clinton's advisory committee on school shootings and presented to Attorneys General Janet Reno and Eric Holder."

*Id.* at 6.  The Court therefore finds that Dr. Fox's testimony as outlined in Paragraphs A, B, C, and D is relevant and reliable; and will deny the Motion to Exclude with respect to Paragraphs A, B, C, and D of the Amended Disclosure.

The Court next finds that Paragraphs E and F, which anticipate Dr. Fox explicitly comparing Defendant's actions to those of most individuals contemplating engaging in a mass shooting, are impermissible because they imply a conclusion about Defendant's mental state during the charged offense.  While Dr. Fox may testify generally about broad trends for individuals who engage in mass shootings under *Diaz*, both *Diaz* and Fed. R. Evid. 704(b) prohibit expert testimony that implies a conclusion about a defendant's mental state during the charged offense.  In explaining why testimony regarding "the knowledge of most drug couriers" was permissible, the *Diaz* Court stated that the testimony "does not necessarily describe Diaz's mental state.  After all, Diaz may or may not be like most drug couriers" and "[t]he jury alone drew th[e] conclusion" from the evidence presented at trial that the defendant knowingly transported drugs like most drug couriers.  *Diaz*, 602 U.S. at 534.  Permitting Dr. Fox to directly state that Defendant's behavior is consistent or inconsistent with the conduct of most individuals who commit mass shootings risks improperly suggesting intent.  *See id.* at 536 (explaining that the expert opined that the majority of drug carriers knowingly transport drugs; and "[t]he jury was then left to decide: Is Diaz like the majority of couriers?   Or, is Diaz one of the less-numerous-but-still-existent couriers who

unwittingly transport drugs?  The ultimate issue of Diaz's mental state was left to the jury's judgment.").  The Court will therefore grant the Motion to Exclude with respect to Paragraphs E and F of the Amended Disclosure.

In sum, the Court will allow Dr. Fox to discuss generally and scientifically the behavioral norms of most individuals who engage in mass shootings in a neutral manner.  For example, Dr. Fox may testify that "most individuals in who engage in mass shootings often exhibit or do not exhibit X behaviors," but Dr. Fox may not state whether Defendant's conduct aligned with that profile or suggested a particular intent.

### B.  Motion *in limine* to Preclude Reference to the Standards and Bases for Emergency Custody and Temporary Detention Orders

Defendant moves this Court to preclude the Government from referring to the standards for the Emergency Custody Order and Temporary Detention Order that were put in place after Defendant was initially arrested at Park Valley Church.  The Government has indicated that it does not object to Defendant's Motion *in limine*.

After being arrested, Defendant was brought to a hospital on an Emergency Custody Order based on officers' perceptions of his mental health.  Dkt. 107 at 1.  After clinicians interviewed him, Defendant was put on a Temporary Detention Order, which resulted in an involuntary detainment for mental health evaluation and care.  *Id.*  One of the possible bases for such orders is that an individual has a substantial mental illness, and there is a substantial likelihood that the individual "*will, in the near future, (a) cause serious physical harm* to himself or others as evidenced by *recent behavior causing, attempting, or threatening harm* to himself or others as evidenced by recent behavior causing, attempting, or threatening harm . . . ."  *Id.*; Va. Code § 37.2-809(B)(1)(a); Va. Code § 37.2-808(A)(i)(a) (emphasis added).

10

As Defendant observes, testimony regarding the standard may violate the Federal Rules of Evidence in at least two ways. Dkt. 107 at 2-3. First, the standard relates to an individual's future dangerousness, which is inadmissible at trial. *See Simmons v. South Carolina*, 114 S.Ct. 2187, 2193 (1994) (explaining that "the jury is not free to convict a defendant simply because he poses a future danger; nor is a defendant's future dangerousness likely relevant to the question whether each element of an alleged offense has been proved beyond a reasonable doubt."). Second, testimony regarding the standard would require a witness to testify about their assessment of Defendant's "recent behavior" and whether Defendant was "causing, attempting, or threatening harm" to Park Valley Church prior to being detained, which is closely related the elements of the charges to be proven in this case. The Court will therefore grant Defendant's Motion *in limine* and preclude the Government from referencing the standards for the Emergency Custody Order and Temporary Detention Order, unless Defendant opens the door. The Government will not be precluded, however, from eliciting testimony that Defendant was taken into custody or that a basis for taking him into custody related to his mental health.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Government's Motion to Exclude Expert (Dkt. 98) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is granted with respect to Paragraphs E and F of Defendant's Amended Disclosure and denied with respect to Paragraphs A, B, C, and D of Defendant's Amended Disclosure. Dr. Fox will be permitted to testify about most individuals who engage or contemplate engaging in mass shootings, but cannot explicitly state whether Defendant's conduct was consistent or inconsistent with these broad trends; and it is

FURTHER ORDERED that Defendant's *Motion in Limine* to Preclude Reference to the Standards and Bases for Emergency Custody and Temporary Detention Orders (Dkt. 107) is GRANTED. The Government is precluded from referencing the standards for issuing an Emergency Custody Order or a Temporary Detention Order and conclusions regarding those standards, unless Defendant opens the door to such testimony. This Order does not preclude witnesses from testifying that Defendant was taken into custody or that a basis for taking him into custody related to his mental health.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
February 27, 2025

_____ /s/
Rossie D. Alston, Jr.
United States District Judge