UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 1:24-cr-0065 (RDA) |
| | ) | |
| **RUI JIANG,** | ) | Sentencing: June 18, 2025 |
| | ) | |
| **Defendant.** | | |

### DEFENDANT'S SUPPLEMENAL MEMORANDUM IN AID OF SENTENCING

In light of the arguments set forth in the government's sentencing memorandum (ECF No. 134), Mr. Jiang submits the following brief supplement to his memorandum (ECF No. 133).

Despite the government's argument ("…as long as the Court speaks to this mental health concern during sentencing, it is free to entirely disregard any claim of mitigation or give it little weight.", ECF No. 134 at 25), Title 18 U.S.C. § 3553(a) requires more than lip service and performative recitation of the sentencing factors. Instead, the statute commands an inquiry into the crime and the defendant so that the Court may fashion an individualized sentence that is responsive to both. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). Speaking to Mr. Jiang's mental illness solely to satisfy this Court's procedural

obligation and then "entirely disregard[ing]" it is fundamentally at odds with this Court's duty at sentencing. Just as it would be blatantly improper for Mr. Jiang to suggest that this Court should "entirely disregard" the seriousness of the offense—so long as the Court "checks the box" by mentioning it at the sentencing hearing—the government's suggestion that the Court do so with respect to Mr. Jiang's mental illness is equally improper.

1. <u>The Government's Basis for Ignoring Mental Health Evidence in this Case— Mr. Jiang's Supposed Failure to Get Help on His Own—Fundamentally Ignores the Nature of Mental Illness. It Also Misstates the Facts.</u>

The government's position on mental health reflects a patient-blaming perspective of mental illness that is unsupported by science. *See* ECF 134 at 24 (Mr. Jiang's "mental health concerns while admittedly mitigating, should not be given great weight. This is because the defendant never appeared to seek out assistance or help with his mental health, but rather let it fester"). The government also misstates the undisputed facts of this case: Mr. Jiang spent months before the offense attempting to stabilize his mental health, including by joining and taking classes at Park Valley Church.

First, the government—without authority—frames Mr. Jiang's mental illness and his decades of struggles with delusions as a failure of his free will. But the government has consistently avoided engaging with Mr. Jiang's delusions. For instance, in its memo, the government claims that Mr. Jiang "made a rationale (sic) decision that revenge, murder, and his own likely death was his way forward." ECF No. 134 at 25. This ignores, as the government did at trial, Mr. Jiang's obvious

delusions around the time of the offense, including in his September 24 letter, in which his reasoning was premised in large part on what he falsely described as his "11+ years, as a political assassin for the government." Gov. Tr. Exh. 6; *see also* Gov. Tr. Exh. 152M (Instagram post hours before offense: "They trained my whole life to be a political pawn, to kill, to speak cryptically, and that is all they ever taught me. And they repaid me by denying the love I needed.") The government's description of Mr. Jiang's offense as a rational decision ignores that the government stipulated at trial that these facts were all delusional. Taking action on the basis of delusional, fictitious beliefs is the literal opposite of "rational".[1]

There is a reason that the government declines to cite scientific authority for its position that Mr. Jiang's inability to address his own profound mental illness is his fault: there is none. Instead, medical authorities identify many reasons mentally ill individuals do not receive the care they need: anosognosia (failure to "recognize other health conditions or problems that you have")[2], cost[3], stigma, or a belief they

---

[1] Though it is plain that Mr. Jiang's mental journey – becoming increasingly angry at God and people he did not know because he believed he sacrificed love and romantic relationships for over a decade while serving as a political assassin for the government – was not rational, Mr. Jiang has neither challenged his competency to stand trial nor raised a not guilty by reason of insanity defense. Irrationality is not incompatible with either competency or sanity.

[2] Cleveland Clinic, *Anosognosia* (last accessed June 16, 2025), available at: https://my.clevelandclinic.org/health/diseases/22832-anosognosia.

[3] When Lieutenant Peak suggested to Mr. Jiang that he could connect Mr. Jiang to a therapist on September 24, 2023, Mr. Jiang told him, "That's the problem. I don't think I can afford that."

could handle the problem without medical treatment.[4] Similarly, in a review of cases addressing untreated mental health, counsel has been unable to identify a single court that has faulted a defendant for failing to find the mental health care that he needs for severe mental illness.

Moreover, the government's contention that Mr. Jiang did not seek help before the offense is factually wrong. Both the government's evidence at trial and Mr. Jiang's original memorandum illustrate that he was proactively seeking help. One of the tragedies of this case (and cases involving mental illness generally) is that a person who is experiencing delusions might not seek out the most effective treatment for their own mental illness.[5] Among other things, Mr. Jiang began an online journal as an attempt at anger management: "using format of either journal, or journal / anger mgmt. using this as an outlet to outpour my thoughts when I get overwhelmingly angry." Gov. Tr. Exh. 112A. Moreover, at the suggestion of a friend, Mr. Jiang sought out the Park Valley Church over the six months preceding the offense, during which time he pursued his own baptism, took hours and hours of

---

[4] *See* American Psychological Association, *Why people aren't getting the care they need* (July 1, 2020), available at: https://www.apa.org/monitor/2020/07/datapoint-care.

[5] While Mr. Jiang attempted to find assistance through God and the Park Valley Church, this Court is certainly familiar with mentally ill defendants who go a different route and "self-medicate" their mental illness symptoms with substance abuse. While each must be judged independently, both paths are attempts by individuals to address the profound difficulty they encounter in the symptoms of their mental illness.

Church-based classes, and spent hours independently doing assignments and reflecting on the Church's prompts. In claiming that Mr. Jiang "did nothing to help himself", the government ignores all of this. Mr. Jiang was looking for help; he was working to address his mental health. Unfortunately for everyone, himself included, he was not independently able to address the profound mental health problems he was developing.

2. <u>Both Case Law and the Sentencing Commission Require that the Court Genuinely Consider Mr. Jiang's Mental Illness Rather than, as the Government Suggests, Pay it Lip Service and Ignore it.</u>

Both case law and the Sentencing Commission require genuine consideration of Mr. Jiang's mental illness alongside the other sentencing factors. The Supreme Court has specifically identified that "sentencing is the appropriate place to consider mitigation: The decisionmaker there can make a nuanced evaluation of blame, rather than choose, as a trial jury must, between all and nothing." *Kahler v. Kansas*, 589 U.S. 271, 286, 140 S. Ct. 1021, 1031, 206 L. Ed. 2d 312 (2020). Indeed, the Fourth Circuit has overturned sentences where sentencing courts fail to engage with defendants' significant mental illness. *United States v. Cox*, 733 F. App'x 688, 692 (4th Cir. 2018). The Fourth Circuit has also required a broad view of mental illness in the defendant's life rather than imposing "an unconstitutional nexus requirement on the mitigating evidence" and the conduct at issue in the case. *Allen v. Stephan*, 42 F.4th 223, 256 (4th Cir. 2022). Simply put, there is neither a statute nor a court

that encourages this Court to "entirely disregard" Mr. Jiang's mental illness while mentioning it at sentencing simply to avoid reversal on appeal.[6]

The Sentencing Commission instructs that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines." *See* United States Sentencing Guidelines § 5H1.3. As Mr. Jiang wrote in his memorandum, there can be no argument that Mr. Jiang's decades-long delusions present a mental health condition to "an unusual degree." Similarly, the guidelines instruct an inquiry into whether "the defendant committed the offense while suffering from a significantly reduced mental capacity". USSG § 5K2.12.

The Court cannot follow the government's lead and ignore the degree of Mr. Jiang's mental illness; if the Court did, it would be impossible to fashion a sentence responsive to Mr. Jiang's "history and characteristics." As Mr. Jiang argued in his

---

[6] The government's position is also inconsistent with that of the Department of Justice, which has written: "As a result, many individuals experiencing behavioral health crises interact with the criminal justice system when what they need is mental health or substance use disorder services." *See* DOJ and DHHS, *Guidance for Emergency Responses to People with Behavioral Health or Other Disabilities* (May 2023) p. 2, available at: https://www.justice.gov/d9/2023-05/Sec.%2014%28a%29%20-%20DOJ%20and%20HHS%20Guidance%20on%20Emergency%20Responses%20to%20Individuals%20with%20Behavioral%20Health%20or%20Other%20Disabilities_FINAL.pdf.

Mr. Jiang does not argue that criminal justice involvement is unwarranted in this case. He simply agrees with the Department of Justice that his need of mental health services is critical to the Court's inquiry.

original memorandum—and as is abundantly clear in both the statute and case law—a sentencing Court must consider all relevant sentencing factors.

## Conclusion

For all the foregoing reasons, and those set forth in Mr. Jiang's Memorandum in Aid of Sentencing, Mr. Jiang submits that the Court should decline the government's invitation to disregard Mr. Jiang's mental health in crafting an appropriate sentence – for he would not be before the Court for sentencing in this case without a long and complicated history of mental health struggles.

Respectfully submitted,

RUI JIANG
By Counsel,

Geremy C. Kamens,
Federal Public Defender

_____/s/_____
Todd M. Richman
Va. Bar # 41834
Nathaniel Wenstrup
Virginia Bar No. 96324
Assistant Federal Public Defenders
Attorneys for Mr. Jiang
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0800 (telephone)
(703) 600-0880 (facsimile)
Todd_Richman@fd.org (email)